In re HIRSCH'S ESTATE.

(Supreme Court, Appellate Division, First Department. December 21, 1906.)

1. REFEREES—RECEPTION OF EVIDENCE—DEPOSITIONS—SIGNATURE OF WITNESSES—WAIVER.

An objection to the reception of testimony taken before a referee not subscribed by witnesses, as required by the general rules of practice, was waived where the parties submitted the questions in dispute to the referee upon the unsigned depositions of witness without calling the attention of the referee to the defect or in any way insisting upon the right to have them signed.

2. TRUSTS—ADMINISTRATION OF TRUST ESTATES—INVESTMENTS—SPECULATIONS.

The purchasing or carrying of stocks on margin cannot be justified under a power to invest the principal of the trust estate, and hence the action of a trustee and executor in devoting the property of the trust estate to the contiuance of a speculation in supplying additional margins for carrying stocks purchased by decedent was not authorized by a provision in a codicil to testator's will, authorizing his executors to invest and keep invested the trust funds in any securities or other forms of investment which they in their discretion should deem proper and advisable, irrespective of the law governing investments by executors and trustees.

3. SAME—GOOD FAITH OF TRUSTEE.

The good faith of a trustee does not excuse his action in devoting the property of a trust estate to the continuance of a speculation begun by decedent.

4. SAME—TESTAMENTARY TRUSTEES—REMOVAL—GROUNDS—REVOCATION OF LETTERS TESTAMENTARY.

Where the executor and trustee of an estate greatly depreciated the property thereof by unauthorizedly continuing speculations begun by decedent, caused himself to be elected president of a corporation of which the estate owned the majority of the stock at a salary of $12,000 a year, and,

in addition to his salary during the time he was president, presented bills
for $24,000 for legal services claimed to have been rendered by him, his
letters testamentary should be revoked, and he should be removed as
trustee on petition of the beneficiaries, since his own interests were neces-
sarily antagonistic to those of the beneficiaries.

Appeal from Surrogate's Court, New York County.

Petition to revoke letters testamentary issued to Edward K. Jones,
as executor of the estate of Ferdinand Hirsch, deceased, and to re-
move him as trustee under the will of such decedent. From a decree
granting the relief petitioned for, Jones appeals. Affirmed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM,
CLARKE, and HOUGHTON, JJ.

Edward W. Hatch and David McClure, for appellant.
Lemuel E. Quigg, for respondent.

INGRAHAM, J. The widow and children of the decedent, Ferdi-
nand Hirsch, presented a petition to the surrogate, alleging: That the
said Ferdinand Hirsch died on the 13th of July, 1901, leaving a last will
and testament, which left substantially all his estate to his executors,
in trust, for certain purposes specified in the will. The will appointed
one of the petitioners Minnie F. Hirsch, the widow of the deceased,
and Edward K. Jones, executors and trustees. The will was admitted
to probate, the executrix and executor duly qualified. The executrix
left to Jones the control and management of the estate, giving him a
power of attorney to represent her. There came into the hands of the
executors about $80,000 in cash or cash assets, and, in addition thereto,
1,882 shares of the stock of the Ferdinand Hirsch Company, a corpora-
tion of which the decedent owned 1,882 out of a total issue of 2,500
shares. That the decedent left him surviving a widow and two chil-
dren, who are the petitioners herein. That the youngest of the two
children became of age on the 24th day of April, 1904, at which time
the will directed a distribution of the estate. It was alleged that a
portion of the income of the estate to which the testator's widow was
entitled under the will had not been paid to her; that prior to his
death the decedent had purchased a large amount of stocks through
various brokers on margin; that after the death of the decedent, the
stocks so purchased having declined in value, Jones borrowed from the
Ferdinand Hirsch Company about $54,000 on behalf of the estate,
which sum, together with other moneys of the estate, aggregating in
all about $71,000, he deposited with the stockbrokers as margin to
secure these speculative accounts; that, the stocks representing these
accounts having further depreciated in value, they were sold, from
which sale there was realized about $25,000; that the estate thus sus-
tained a loss of all the moneys on deposit at the testator's death with
the brokers as margin, and also about $52,000 of the property of the es-
tate which had been deposited as additional margin by Jones as ex-
ecutor. It is further alleged that Jones, by virtue of his control of
the stock held by him as executor and trustee, caused himself to be
elected president of the Ferdinand Hirsch Company at a salary of
$12,000 per year; that, in addition, he received a salary of $1,200 per
year as counsel for the corporation; that Jones refused to make a

distribution of this stock, as directed by the will, in order to remain in control of the company and to be continued in his position as president and receive therefrom for his own use the salary as such president and counsel. There were also other allegations as to the relations between the petitioners and Jones, which showed that they had become actively antagonistic; the petitioners claiming that Jones was using his position as executor and trustee for his own benefit and against the interest of the beneficiaries under the will. The petitioners allege that, in view of the facts stated and the disagreement between themselves and Jones, the estate should not be allowed to remain in the partial control of Jones.

The will of the testator, after three small legacies, gave to the executor and executrix all the estate in trust, to pay the income arising therefrom to the testator's widow during the minority of his two children, and when the youngest child should arrive at the age of 21 to pay 10 per cent. of the principal of the trust fund to the testator's widow, 25 per cent. thereof to each of his children, and the remainder of the principal to invest and apply the income to the use and benefit of his wife during her life, and upon her death to transfer the same to the two children, share and share alike. By a codicil executed a few days before his death the testator authorized his executors to invest and keep invested his said estate "in any securities or other forms of investment which they, in their discretion, shall deem proper or advisable, irrespective of the law governing investments by executors and trustees and I also authorize my said executors to continue my investment in the stock of The Ferdinand Hirsch Company as long as my said executors shall in their discretion determine to be advisable and to the interest of my estate." In answer to this petition Jones filed an answer which denied some of the allegations contained therein, and alleges that:

"The affairs of the estate, so far as the executorship is concerned, have practically been completed, and are at an end; that respondent believes and has been advised by counsel that it is his duty to continue to act as one of the trustees of that portion of the estate directed by the will of testator to be held in trust, because of the confidence reposed in him by the testator, Ferdinand Hirsch, and avers that it would be destructive to the interests of the estate and of the petitioners to have him cease to represent the trust estate and to be president of the Ferdinand Hirsch Company; and that the transfer of the trust property to the petitioner Minnie F. Hirsch would be in direct opposition to the testator's wishes, and to the great injury of the petitioners."

Upon this petition and answer the surrogate referred the issues of fact to a referee, "to make such proof upon said issues as may be presented by either party, and report the evidence so taken, with his opinion thereon, to this court with all convenient speed." An amendment to the petition was allowed by the surrogate, charging that Jones has, in addition to the salary that he receives from the corporation, presented various bills to that corporation for legal services claimed to have been rendered by him during the time that he was president, amounting in the aggregate to about $24,000, which amount he has received in addition to the salary allowed him. It is further alleged that to secure the payment of $54,000 which he borrowed from the company as executor and trustee of the estate, and which he deposited

with these stockbrokers as margin upon the stock they were carrying for the estate, the said Jones pledged to the said corporation 805 shares of the stock of the said company which he held as trustee; that this pledge was made without the knowledge or consent of his coexecutor and trustee, and without the knowledge or consent of any of those interested in the estate.

The reference then proceeded and resulted in a report by the referee of the testimony taken before him. By this report he submitted to the surrogate four volumes of testimony, together with certain exhibits introduced in evidence before him, which included all the evidence taken before him. This testimony was not signed by the witnesses, the report stating that no request was made by either party at any time for signatures; that the testimony was declared by the parties to be closed and a date fixed for the final submission of the case to the referee for his opinion without any request or condition as to the signature of any of the witnesses; that he thus deemed the right to have the depositions signed by the witnesses waived. With this report the referee submitted an opinion which in effect held that the executor had no right to carry on the speculations of the testator in the purchase of these stocks on margin after his death, and that, if the trustees carried on such speculations, they did so at their own risk. The fact that the executors and trustees acted in good faith in the premises and believed they were benefitting the estate was no defense, and, after calling attention to the relations between Jones and the beneficiaries of the estate and his coexecutor, stated that it was his opinion that the letters testamentary issued to Jones should be revoked, and that he should be removed as trustee and a new trustee appointed in his place. Upon this evidence taken before the referee the matter was brought on before the surrogate, who concurred in the opinion of the referee and followed his recommendations. He found the facts which were proved before the referee, and as conclusions of law that "Edward K. Jones, an executor of and trustee under the last will and testament of Ferdinand Hirsch, deceased, has wasted and improperly applied the money and other assets in his hands, has invested money in securities unauthorized by law, and has improvidently managed and injured the property of the said estate committed to his charge"; that he was unfit for the due execution of his office as an executor, and that the letters testamentary issued to the said Jones should be revoked; that Jones was unfit for the due execution of his trust under the last will and testament of Ferdinand Hirsch, deceased; and that he should be removed as trustee, and awarding costs against Jones personally. In pursuance of this decision, a decree was entered revoking the letters testamentary and removing Jones as trustee, and awarding costs against him.

Before the surrogate the appellant objected to the methods adopted by the referee, claiming that the referee acted as though the reference was to hear and determine the issues in an action, and not a mere hearing to take testimony and report; that he excluded evidence offered by the appellant; that the surrogate should not have determined the question upon the evidence taken before the referee; and that the matter was before the surrogate for trial. The surrogate seems to have sustained this contention and fixed a date for the hearing upon the

petition and answer, stating that, if any one suggested that any evidence had been improperly excluded by the referee, he would hear it, but declined to allow counsel to read orally before him all the testimony taken before the referee, as it was before him and he would examine it, but that he would be glad to receive anything that either party should submit bearing upon the question. A question was then raised as to the examination of the appellant before the referee, when, the appellant being present, the court said he would put him on the stand and examine him. The appellant's counsel seems to have raised some objection to this, and the court said:

"You may put Mr. Jones on the stand and examine him as to such questions as I rule are admissible, or you may refrain from doing so."

Whereupon counsel for the appellant called the said Jones as a witness, and he was examined before the surrogate.

The only irregularity in the proceedings, so far as I can discover from the record, is that the testimony of the witnesses before the referee was not subscribed by them as required by the general rules of practice. This testimony was taken by a stenographer under a stipulation by all the parties to the proceeding made before the referee. No claim was made by either of the parties that the stenographer's notes of the testimony should be signed by the witnesses, and no claim is made that the minutes submitted to the surrogate was not a correct transcript of the testimony of the witnesses. After the testimony had been taken by the referee and considered by him, and reported to the surrogate with his opinion, it is, I think, too late for any of the parties to the proceeding to object to the reception of the testimony on the ground that it was not signed by the witnesses. That objection was waived by the parties submitting the question to the referee upon the depositions of the witnesses unsigned without calling the attention of the referee to the fact that they were not signed, or in some way insisting upon their right to have the witnesses sign their depositions. A party to such a proceeding cannot speculate upon the result of a submission to the referee, and, where it is adverse to him, insist upon such an irregularity, and it is too late, after the testimony has been reported to the court, to make such an objection.

I also think the surrogate correctly determined the position of the case before him, and that all the rights of the parties were preserved when he allowed either party to call any additional witnesses they desired, actually took all the testimony offered by the appellant, and considered the case on the testimony taken before the referee and the testimony taken before him.

In determining this question, it is unnecessary for us to review the personal dispute that has arisen between the executrix and her children, who were the beneficiaries of the estate, and the executor. Neither the referee nor the surrogate charges the appellant with bad faith or any personal dishonesty in his relations to the trust estate, and it is sufficient to say that we see no evidence to justify such a charge. That the appellant fully believed that his investments of the property in the estate to continue these stock speculations commenced by the testator before his death was for the benefit of the estate, and would result in

saving it from considerable loss that was shown by the condition of the account at the time of the death of the testator, may be freely conceded, as I think it is fairly established by the evidence. When the question of a continuance by the executors and trustees of an estate of such a speculation is considered from a legal standpoint, it is clear, I think, that it is unauthorized. The situation that existed at the death of the testator was that he had purchased through several brokers a large amount of stock for which he had paid a comparatively small percentage of the purchase price, and owed the brokers the balance. We may assume that this stock became the property of the testator, and that he owned the stock and owed the brokers the purchase price, less the amount he had deposited as margin; the brokers holding the stock as collateral security for the payment of the balance of the purchase money. The beneficiaries of this estate were the widow and children of the testator. An estate was left irrespective of this amount in the hands of the brokers sufficient to afford his widow and children a comfortable support. Certainly common prudence required that such a speculation should be closed out at the earliest practicable moment, and the income from the property secured to the beneficiaries, and not exposed to the perils of continuing such a speculation. The appellant was a lawyer who had been the trusted adviser of the testator, and was made a trustee under his will in order to protect his widow and children. It is quite clear from the evidence that the widow realized this relation of the appellant to her husband, and as between the beneficiaries of the estate and the appellant it is no excuse for the latter that his coexecutor and trustee concurred in the improper disposition of the property of the trust. It is evident that the appellant controlled the management of the estate, and that his coexecutor confided in him and followed his advice in relation to the transactions which are now criticised. It is undoubtedly true that the continuance of this speculation could be of no possible benefit to the appellant personally, and that he believed that by continuing this speculation for a short time it would be advantageous to his estate; but at the same time it was, as I view it, an unauthorized appropriation of the estate's money, and, while the fact that the executor had no personal interest in the account and was doing what he did for the benefit of the estate has an important bearing upon a moral standpoint, it cannot affect his liability for an improper use of the money that he held in trust for these beneficiaries.

The appellant, however, insists that the codicil to the will executed a few days before testator's death, and while these speculative accounts were in evidence, authorized the trustees to apply the moneys of the estate to the continuance of these speculations. I can see no such authority conferred upon the executors or trustees by this codicil. This codicil authorized the executors to do two things: First, to invest and keep invested the trust estate in any securities or other forms of investment which they in their discretion should deem proper and advisable, irrespective of the law governing investments by executors and trustees; second, to continue his investment in the stock of the Ferdinand Hirsch Company as long as the executors should in their discretion determine to be advisable and to the interest of the estate. The

power thus given to the executors was one of investment, and would possibly have authorized the executors, if they had money of the estate in their hands, to have paid up the amount due to the brokers by the testator and taken over the stocks which the testator had purchased as investments of the trust estate. But that was not done, and was not intended to be done by the trustees. They invested none of the property of the estate in securities which could be held as constituting the trust estate, but continued what was purely a speculation, and exposed the trust estate to what actually happened—the loss of a large part of the money deposited with the brokers in continuing the speculation. This had none of the elements of an investment, but was simply continuing a speculation, with which trustees should have nothing to do. The contribution of trust funds to continue what is purely a speculation, like the purchase or carrying of stocks on margin, can never be justified under a power to invest the principal of a trust estate; the investment being for the purpose of securing an income for the beneficiaries, while a speculation is for the purpose of realizing a profit from the transaction. The original purchase of these stocks by the testator was a pure speculation, and not an investment, is perfectly clear, and its continuance by the executors and trustees by supplying additional margin for the purpose of carrying the stocks was a continuance of that speculation, and in no sense an investment. I can come to no other conclusion than that the action of the trustees in devoting the property of the trust estate to a continuance of this speculation was unauthorized either by the law in relation to the administration of trust estates or by the will and codicil of the testator. And the good faith of the appellant in advising this course cannot excuse him when called to account for his administration of the trust.

It is further claimed that the use by the appellant of the control of this stock to make himself president of the corporation at a large salary was an arbitrary and unjustifiable exercise of such power. This, together with the fact that while president and in receipt of this salary he submitted bills for legal services to a large amount, and his general conduct during his incumbency of this position, where his own interests were necessarily antagonistic to the interests of the beneficiaries, who were dependent upon the income received from this stock for their support, was properly considered by the surrogate in determining whether the executors and trustees should continue to act. It is not necessary to determine that the appellant acted in bad faith or received from the corporation a sum in excess of what he would have been legally entitled to had he been selected as president and counsel for the company by the stockholders owning stock in their own right. He placed himself in a position where his personal interest and the interest of the beneficiaries for whom he was trustee were to a certain extent antagonistic. We may assume that the amounts that he received from the company were not in excess of the value of the services rendered by him to the company, but every dollar that was paid out by the company for salaries and legal services depreciated the amount available for distribution among the stockholders. When, therefore, he was elected president of the company by directors whose election he as trustee controlled and allowed them to vote him a large salary as

such president, and also allowed them to authorize the payment to him of bills for the legal services which he rendered to the company, he subjected himself to the criticism of using the position that the ownership of the stock held by him in trust gave him to secure to himself this salary and legal employment which resulted in personal advantage to himself. These acts of the appellant finally brought him into active antagonism with the beneficiaries of the trust estate. Their relations as disclosed by the evidence are such that it is quite clear that the affairs of the trust cannot be advantageously administered by the two trustees, and under such circumstances we think that the surrogate was amply justified in arriving at the conclusion that he did—that the interest of the trust required that the appellant should be removed as trustee.

There is no question here as to the liability of the appellant and his coexecutor for the losses incurred in consequence of continuing the speculation, and we do not wish to be understood as expressing any opinion upon that question. What has been said relates solely to the question as to whether or not the surrogate was justified from the evidence before him in revoking the letters testamentary issued to the appellant and removing him as trustee.

The appellant also complains of the award of costs against him in this proceeding, but we think the surrogate was justified in charging him with the expenses, as, considering the relations which existed between the appellant and his coexecutor and trustee and the beneficiaries of the estate, we believe he was not justified in putting the estate to the expense of this reference, when, upon the conceded facts, we think the appellant should have retired from the trust and allowed the court to direct its further administration.

Other questions were argued upon the appeal which we do not consider it necessary to either discuss or determine, and the affirmance of this order should not be considered as passing upon any question except the one that has been here discussed, which is that upon the conceded facts the surrogate was justified in revoking the letters testamentary of the appellant and removing him as trustee.

It follows, therefore, that the order appealed from must be affirmed, with costs. All concur.