## PYLE v. PYLE.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. TRUSTS (§ 166*)—TRUSTEES—REMOVAL.

A Surrogate's Court may only remove a testamentary trustee when any of the conditions prescribed in Code Civ. Proc. § 2817, authorizing the removal of a testamentary trustee on specified grounds, exists, and not otherwise.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 217, 218; Dec. Dig. § 166.*]

2. COURTS (§ 472*)—JURISDICTION—SURROGATE'S COURT.

Where complete relief can be obtained in the Surrogate's Court, the Supreme Court will refuse to take cognizance of an action, and, before the Supreme Court will take jurisdiction, facts must be alleged in the complaint showing that adequate relief can only be obtained in the Supreme Court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 472.*]

3. COURTS (§ 472*)—TRUSTEES—REMOVAL—JURISDICTION.

Under Real Property Law (Laws 1909, c. 52 [Consol. Laws, c. 50]) § 112, authorizing the Supreme Court to remove a testamentary trustee not only for the reasons justifying the Surrogate's Court to do so, but also for any other cause, the Supreme Court may take jurisdiction of an action for the removal of a testamentary trustee on a ground which does not authorize the Surrogate's Court to act.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1204; Dec. Dig. § 472.*]

4. TRUSTS (§ 166*)—TRUSTEES—REMOVAL—GROUNDS.

The court will not remove a testamentary trustee on the application of the co-trustee, where the reasons for the removal relate to the management of the trust estate involving judgment and discretion, and where by reason of business experience the trustee is better qualified to act than the co-trustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 217, 218; Dec. Dig. § 166.*]

5. TRUSTS (§ 166*)—TRUSTEES—MISCONDUCT—REMOVAL.

Where a trustee has placed himself in such a position that his personal interest has or may come in conflict with his interest as trustee, the court will remove him without an inquiry as to whether the transactions complained of were fair or not.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 217, 218; Dec. Dig. § 166.*]

6. TRUSTS (§ 166*)—TRUSTEES—MISCONDUCT—REMOVAL.

A testamentary trustee owned personally a half of the stock of a corporation formed after testator's death, and from it he received $25,000 a year as president. He and a co-trustee owned in their representative capacity the other half of the stock. A disagreement between them operated to disfranchise such half because the trustee insisted on voting the stock one way and the co-trustee the other. The co-trustee objected to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the salary as excessive. *Held,* that the act of the trustee in accepting a salary as president of the corporation had the effect of placing him in a position whereby his personal interest might come directly in conflict with his interest as trustee, justifying his removal without reference to the question of his good faith.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 217, 218; Dec. Dig. § 166.*]

Appeal from Special Term, New York County.

Action by Mary V. Pyle, individually and as trustee of William S. Pyle, deceased, against James T. Pyle, as trustee of the deceased and others. From a judgment overruling a demurrer to the complaint, defendant James T. Pyle appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, and CLARKE, JJ.

John A. Garver, for appellant.
Morgan J. O'Brien, for respondent Mary V. Pyle.
Ralph W. Page, for other respondents.

McLAUGHLIN, J. William S. Pyle died on January 1, 1906, leaving a will and codicils thereto, which were duly admitted to probate, and letters testamentary issued to the plaintiff and the defendant James T. Pyle, the executors and trustees therein named. The testator left him surviving the plaintiff, his widow, and two children, the defendants Mary V. and William Scott Pyle, his only heirs at law and next of kin. By his will, after making certain specific bequests, he gave his residuary estate, consisting of both real and personal property, to his wife and his brother, the defendant James T. Pyle, in trust, to receive the income derived therefrom and pay the same to the wife during her life, with remainder to the children, under certain conditions. The trustees accepted the trust, since have been and now are acting as such. At and for some time prior to the death of William, he and his brother James had been engaged as partners in business under the firm name of James Pyle & Sons. The business, which consisted, among other things, in manufacturing and selling Pearline, was an extensive one, large amounts of capital being invested, and prior to the death of William had proved very profitable. For the purpose of preserving the business to their respective families, in case of the death of one of the partners, an agreement was entered into between the two brothers some time in 1904, by which it was provided that, in case of the death of one, the business of the firm should be incorporated and the shares of the stock of such corporation divided equally between the representatives of the deceased partner and the survivor.

Shortly before the testator's death he executed a codicil to his will, evidently for the purpose of enabling the agreement to be carried into effect, by which he authorized and directed his executors to co-operate and unite with his brother, the surviving partner, in forming such corporation. After his death, such corporation was formed with a capital stock of $400,000 of the par value of $100 each; one half of such stock being retained by the defendant James and the other half by the plaintiff and himself as trustees of the estate of William, and such

stock is now so held, except a few shares which have been delivered to two other persons to qualify them as directors of the corporation. As a condition of consenting to the incorporation, the defendant James insisted that he should be made president of the corporation and for the first year for the services rendered by him as such should be paid a salary of $36,000, which conditions were complied with. The business of the corporation during the year was not nearly as profitable as it theretofore had been. Objection was thereafter made to James receiving a salary of $36,000 as president, and he finally consented to reduce the same to $25,000, which amount, however, he insisted upon, notwithstanding the plaintiff, acting through her representatives, objected to the payment of a salary in excess of $12,000, except under certain conditions. His salary was finally fixed at $25,000, and the corporation has since been and is now paying him that sum. The plaintiff has become dissatisfied with various acts of James as a trustee of her husband's estate, not only as to the disposition to be made of certain trust property, but especially as to the management of the corporation which James practically controls by reason of the two trustees not agreeing as to the manner in which the stock held by them shall be voted, and she brings this action to remove him as a trustee, setting out the above facts and many others in her complaint, to which defendant demurred upon the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and he appeals.

First. It is urged the judgment appealed from should be reversed because the complaint fails to show that complete relief cannot be obtained in the Surrogate's Court. There is no doubt that a Surrogate's Court has the power, under section 2817 of the Code of Civil Procedure, to remove a testamentary trustee when there exists any of the conditions set forth in such section. Matter of Hirsch, 116 App. Div. 367, 101 N. Y. Supp. 893, affirmed 188 N. Y. 584, 81 N. E. 1164. A Surrogate's Court has only such power as is given to it by statute, and this power was conferred upon it by chapter 482 of the Laws of 1871. Savage v. Gould, 60 How. Prac. 234. The rule seems to be quite well settled that, where complete relief can be obtained in the Surrogate's Court, the Supreme Court will refuse to take cognizance of an action; that, before it will do so, facts must be set out in the complaint sufficient to show that adequate relief cannot be obtained except in the Supreme Court. Borrowe v. Corbin, 31 App. Div. 172, 52 N. Y. Supp. 741, affirmed 165 N. Y. 634, 59 N. E. 1119; Citizens' Central Bank v. Toplitz, 113 App. Div. 73, 98 N. Y. Supp. 826, affirmed 188 N. Y. 634, 81 N. E. 1162; Matter of Smith, 120 App. Div. 199, 105 N. Y. Supp. 223; Post v. Ingraham, 122 App. Div. 738, 107 N. Y. Supp. 737. But it is at least doubtful if the question whether it will take jurisdiction of an action where complete relief can be obtained in the Surrogate's Court can be raised by demurrer to a complaint on the ground that it does not state facts sufficient to constitute a cause of action. The question seems to have been decided otherwise by this court. Mildeberger v. Franklin, 130 App. Div. 860, 115 N. Y. Supp. 903. However, that question is not here necessarily involved.

A Surrogate's Court can remove a testamentary trustee only for some one or all of the reasons stated in the section of the Code referred to, which are disqualification, incompetency which renders him unfit for the due execution of the trust, or some affirmative act to the detriment of the trust estate or its management. The Supreme Court has power to remove a testamentary trustee, not only for the reasons which would justify such action in the Surrogate's Court, but also "for any other cause." Section 112 Real Property Law (chapter 52, Laws 1909 [Consol. Laws, c. 50]). So, if it be assumed that the Surrogate's Court might remove a trustee for certain reasons, it does not follow that a complaint would be defective in the Supreme Court because it might conclude to remove him for other reasons, concerning which the Surrogate would have no power.

Second. It is urged that the judgment should be reversed because the facts set out in the complaint would not justify the court, if the same were established at the trial, in removing the defendant as trustee. In the main I think this contention is correct. Most of the reasons assigned for the ground of removal relate to the management of the trust estate, which necessarily involves judgment and discretion, and as to these it is fairly to be assumed that the appellant, by reason of his business experience, is better able to determine them than the plaintiff.

There is, however, one ground specified which, if true, not only presents a serious question, but I think, under all the facts and circumstances, entitles the plaintiff to have the appellant removed. It is a fundamental rule relating to the acts of a testamentary trustee, that he must not only act for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him, for himself. He owes an undivided duty to his beneficiary, and he must not, under any circumstances, place himself in a position whereby his personal interest will come in conflict with the interest of his cestui que trust. Pomeroy's Equity Jurisprudence, §§ 1075–1077; Chaplin on Express Trusts & Powers, § 193; Matter of Hirsch, supra. The purpose sought to be secured by this rule of law is to require a trustee to assume a position where his every act is above suspicion and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. When he has acted otherwise, or when he has placed himself in such a position that his personal interest has or may come in conflict with his interest as trustee, then, so far as I have been able to discover, the court never hesitates to remove him. Under such circumstances, the court does not stop to inquire whether the transactions complained of were fair or unfair. It stops the inquiry when the relation is disclosed. Munson v. S. G. & G. R. R. Co., 103 N. Y. 58, 8 N. E. 855. The appellant personally owns one half the capital stock of the corporation, from which he is receiving a salary of $25,000 a year as its president. He and the plaintiff as trustees of his brother's estate own the other half. The disagreement which has arisen between the two trustees in effect disfranchises their stock, the plaintiff insisting on voting it one way and he the other, the effect of which is to give him the actual control of the corporation by virtue

of the stock which he owns personally. By accepting a salary as president of the corporation, he has placed himself in a position whereby his personal interest may, or has, come directly in conflict with, and to a certain extent antagonistic to, his interest as trustee. It is not necessary to determine that he has acted in bad faith or received from the corporation a sum in excess of what he would have been legally entitled to if he had been selected as president of the corporation had he not been a trustee of an estate holding one-half the capital stock. One-half of the salary paid to him diminishes to that extent what would otherwise be paid to the beneficiaries of the trust which he represents, and to this extent at least he is not in a position to so act that his personal interest does not come in conflict with his interest as trustee. He ought not to have placed himself in such position, and, having done so, ought not to be permitted to act as trustee.

I am of the opinion, therefore, for the reasons stated, that the complaint stated a cause of action, and the judgment appealed from should be affirmed, with costs, with leave to the appellant to withdraw his demurrer and answer on payment of the costs in this court and the court below. All concur.