(82 Misc. Rep. 135.)

## In re STALLO.

(Surrogate's Court, New York County. August, 1913.)

1. EXECUTORS AND ADMINISTRATORS (§ 32*) — LETTERS OF ADMINISTRATION — REVOCATION.

Code Civ. Proc. § 2685, specifying the grounds for revoking letters of administration, applies only to letters granted to one entitled thereto as a matter of right under section 2660, and not to a coadministrator who has received letters under such section, not as a matter of right, but upon the consent of the person entitled thereto.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 191–212; Dec. Dig. § 32.*]

2. EXECUTORS AND ADMINISTRATORS (§ 35*) — LETTERS OF ADMINISTRATION — REVOCATION—DISQUALIFICATION OF ADMINISTRATOR.

Where a trust company with whom decedent had pledged securities for the payment of a note was appointed administrator of decedent's estate, its subsequent act of selling the pledged securities, which sale the next of kin claimed was in violation of an agreement extending the note and was made when the financial market was depressed, all of which claims the trust company denied, disqualified it to continue as administrator and to require revocation of its letters of administration.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. § 35.*]

3. COURTS (§ 202*)—PROBATE COURT—FINDINGS—NECESSITY.

Where the facts upon which a surrogate's decision is based are not controverted, findings of fact and conclusions of law need not be made.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Application of Laura McDonald Stallo to revoke letters of administration issued to the Metropolitan Trust 'Company upon the estate of Alexander McDonald, deceased. Revocation ordered.

Rockwood & Haldane, of New York City, for petitioner.

Stetson, Jennings & Russell, of New York City, for Guaranty Trust Co., as guardian of Helena McDonald Stallo Murat.

Carter, Ledyard & Milburn, of New York City, for Metropolitan Trust Co.

COHALAN, S. This is an application to revoke letters of administration granted by this court to the Metropolitan Trust Company upon the estate of Alexander McDonald, deceased. The petition for revocation is made by Laura McDonald Stallo, granddaughter of the decedent and one of his next of kin.

Alexander McDonald died intestate on the 18th of March, 1910. At the time of his death he was a resident of this county. His granddaughters, Laura McDonald Stallo and Helena McDonald Stallo, were his only next of kin. Both of them were infants at the time of his death. Their father, Edward K. Stallo, was appointed their general guardian, and on the 29th of April, 1910, letters of administration upon the estate of Alexander McDonald were issued out of this court to the said Edward K. Stallo. Subsequently and on the 18th of October, 1910, letters of administration were issued to the Metropolitan Trust Company of New York as coadministrator with Edward' K. Stallo. On December 23, 1910, the letters issued to Stallo were revoked, and the Metropolitan Trust Company has since acted as sole administrator of the estate of Alexander McDonald, deceased.

It is alleged in the petition herein, and not denied in the answer filed by the Metropolitan Trust Company thereto, that prior to the death of the said Alexander McDonald he had considerable business transactions with the Metropolitan Trust Company, and that on December 8, 1909, he executed a certain promissory note to the trust company for $2,700,000, payable on December 8, 1910. Edward K. Stallo joined with him as maker of the note. McDonald and Stallo deposited with the trust company as collateral security for the payment of the note 2,000 shares of stock of the Standard Oil Company and bonds and stock of the New Orleans, Mobile & Chicago Railway Company of a par value of $4,800,000. The note further provided that the Metropolitan Trust Company, as pledgee of the securities, had the right, upon the nonpayment of the note when due, to sell all the securities at public or private sale without advertisement or notice. The note was not paid at maturity. At various times during the month of June and September, 1911, and after the maturity of the note, the Metropolitan Trust Company, as pledgee of the securities given to secure payment of the note, sold the said securities and applied the proceeds to the payment of the note. The amount realized by the sale of the securities in excess of the amount required for the payment of the note was held by the Metropolitan Trust Company as administrator of the estate.

It is also alleged in the petition, and not denied in the answer, that

the Metropolitan Trust Company, as administrator, charged on its books the sum of $33,701 as commissions for making the said sales. Before the filing of the petition, however, this error was corrected, so that at the time of the filing of the petition the assets of the estate in the hands of the trust company as administrator were not diminished by this amount. The petition further alleges that prior to the maturity of the said note the petitioner, with her father and sister, called at the office of the Metropolitan Trust Company and obtained a renewal of the said note for a period of two years. This is denied by the Metropolitan Trust Company. The petition also contains allegations that prior to the making of the said note the Metropolitan Trust Company charged certain amounts against the said loan; but, as these transactions took place prior to the issuance of letters of administration to the said Metropolitan Trust Company, they may be disregarded in the consideration of the questions involved in this application.

If the Metropolitan Trust Company, as payee of the note for $2,700,-000 and pledgee of the securities deposited with it to secure payment of the note, agreed to renew the note for two years, as stated in the petition, its sale of the securities before the maturity of the note as so renewed resulted in a loss to the estate of over $1,000,000. Therefore the right of the estate of Alexander McDonald to the difference between the amount realized upon the sale of the securities and the amount for which they could have been sold at the time of the expiration of the renewed note is dependent upon the determination of the issue raised by this allegation in the petition and its denial in the answer.

[1] At the time that letters of administration were issued to the Metropolitan Trust Company in conjunction with Edward K. Stallo, the company was not, independently of the consent of Stallo, entitled to such letters. They were granted by the surrogate in the exercise of the discretion vested in him by section 2660, Code of Civil Procedure, when it appeared by the petition submitted to him that the person entitled to letters consented that the trust company be made coadministrator with him. But as the letters were granted to the trust company in conjunction with Stallo, not because of any independent right which the trust company had to such letters, but because of the consent of the person who was entitled to be appointed administrator, it would appear that, when the letters issued to Stallo have been revoked and the next of kin now object to the continuance of the trust company as administrator, the letters issued to it as coadministrator may be revoked in the discretion of the surrogate without an allegation of the existence of any of the grounds mentioned in section 2685 of the Code for the revocation of letters. If such power is not vested in the surrogate, then the provision in section 2660 as to the issuance of letters to a coadministrator might be used to nullify the effect of the prior provisions of that section. For instance, if a person died intestate, leaving a widow and adult children, the widow, being entitled to letters, could consent to the issuance of letters to a stranger as coadministrator. After such letters had been issued to the coadministrator, the widow could resign, and the administration of the estate would

then be placed in the hands of a stranger, to the exclusion of persons entitled to share in the estate, and who, if the widow had renounced, would be entitled to letters. It is scarcely conceivable that it was the intention of the Legislature that in such a case the letters issued to the coadministrator could not be revoked without showing such misconduct on the part of the coadministrator as would warrant the surrogate in revoking letters issued to a person entitled thereto. I am therefore inclined to think that section 2685, Code of Civil Procedure, has reference only to an administrator who received letters because he was entitled thereto, and that it has no application to a coadministrator who received letters not as a matter of right, but upon the consent of the person entitled to letters of administration. In the latter case, as the issuance of letters is dependent upon the consent of the person entitled to letters, and is in the discretion of the surrogate, it would appear that, when the consent is withdrawn and the letters of the principal or original administrator are revoked, the surrogate may, in his discretion, revoke the letters issued to the coadministrator and grant letters of administration to the person entitled thereto in accordance with the provisions of section 2660 of the Code.

Subdivision 1 of section 2685 of the Code provides that an application may be made for the revocation of letters:

"Where the executor or administrator was, when letters were issued to him, or has since become, incompetent, or disqualified by law to act as such; and the grounds of the objection did not exist, * * * upon the hearing of the application for letters."

It is not contended that the Metropolitan Trust Company is incompetent to act as administrator within the meaning of the word "incompetent" as defined in section 2661 of the Code.

[2] It therefore remains to be determined whether, because of facts that have developed or action which it has taken since the issuance to it of letters of administration, it has become disqualified to act as administrator of the estate.

At the time that letters of administration were issued to the trust company, the note for $2,700,000 was not due and none of the securities pledged for the payment of the note had been sold. It held the securities in its capacity of pledgee, but it claimed no interest in them apart from its lien as such pledgee. Therefore at that time the trust company neither had nor claimed any interest in the estate adverse to the interests of the next of kin. But after letters of administration had been granted to the trust company, and while it was acting as sole administrator of the estate, it sold as pledgee the securities pledged with it for the payment of the note made by the decedent, and paid to itself as administrator the balance realized from the sale in excess of the amount required for the payment of the note. The next of kin now allege that the Metropolitan Trust Company, as pledgee, had agreed to extend the time for the payment of the note from December 8, 1910, to December 8, 1912, and that in violation of this agreement the trust company, as pledgee, sold the securities when the financial market was depressed and when it was impossible to realize the full

value of the securities. The trust company, as pledgee, denies the making of the agreement for a renewal of the note, and contends that under the terms of the agreement executed at the time of the making of the note the trust company had the right to sell the securities when the note was not paid at maturity. These conflicting statements and contentions create an issue of fact between the Metropolitan Trust Company and the next of kin of the decedent which, if it had existed at the time the trust company applied for letters of administration upon the estate of Alexander McDonald, deceased, would have prevented it from obtaining such letters. Now that the facts are brought to the attention of the court, and it is made to appear that the Metropolitan Trust Company as administrator of the estate of Alexander McDonald, deceased, has taken a position antagonistic to the interests of the estate, and denies the making of the agreement which, if its validity were established, would increase the assets of the estate by over $1,000,000, it seems that it is disqualified to continue to act as administrator, and that it is the duty of the court to revoke the letters issued to it. As pledgee of the securities it alleges its right to sell them at the time the sales were made; as administrator of the estate of Alexander McDonald, deceased, it upholds the action of itself as pledgee and denies that the agreement for the extension of the note was ever made. Instead of attempting to maintain the contention of the next of kin, which would result in materially increasing the assets of the estate, it opposes such contention and maintains the legality of its action as pledgee. As administrator of the estate of Alexander McDonald, deceased, it is its duty to attempt to maintain the contention of the next of kin as to the agreement for renewal of the note; but in violation of such duty it opposes the interests of the estate and attempts to support the contention of itself as pledgee. As the law provides for the appointment of an administrator of the estate of an intestate in order that the assets of the estate may be collected, its claims enforced, and distribution made to the parties entitled thereto, and as the administrator acts in such capacity as the representative of the court, it would not only be a violation of law but a travesty on justice to continue a person as administrator of an estate when it is apparent that his interest is opposed to the interests which he has been appointed by the court to protect and conserve.

In Pyle v. Pyle, 137 App. Div. 568, 122 N. Y. Supp. 256, the court said that, if a trustee places himself in a position where his personal interest is or may come into conflict with his interest as trustee, the court never hesitates to remove him. If such conflict of interest justifies the removal of a trustee, it should be sufficient to warrant the removal of an administrator appointed by the court. Justice requires that each party to a proceeding have an equal opportunity of presenting his case to the tribunal selected for its determination, and it is not in accordance with this conception of justice that a person or a corporation should be permitted to represent an estate in a proceeding brought by the estate against such person or corporation in its individual capacity. The next of kin are entitled to have some one represent them whose interests do not conflict with the interests of such next

of kin. Matter of Wallace, 68 App. Div. 649, 74 N. Y. Supp. 33; Matter of West's Estate, 40 Hun, 291. The amount involved in the controversy between the next of kin and the Metropolitan Trust Company is so large that both parties are entitled to have the issues determined by a jury, and it is essential for the promotion of justice and the protection of the rights of the distributees that an administrator should be appointed whose interests are not antagonistic to those of the estate.

It would therefore appear that, because of the facts that have developed since the granting of the letters of administration of the Metropolitan Trust Company, it has become disqualified to act as such administrator.

Either of the reasons given above would seem to me to be sufficient to warrant the revocation of the letters heretofore issued to the Metropolitan Trust Company as administrator of the estate of Alexander McDonald, deceased.

[3] As the facts upon which I base my decision are not controverted, it is not necessary to submit findings of fact and conclusions of law. Settle order on notice revoking letters of administration to the Metropolitan Trust Company as administrator of the estate of Alexander McDonald, deceased, and directing an accounting of its proceedings as such administrator.

Decreed accordingly.