GEORGE M. CRUMMEY and Others, Plaintiffs, v. FRANCIS W. MURRAY, JR., and Another, as Trustees under the Last Will and Testament and Codicil of GEORGE W. MURRAY, Deceased, Defendants.

Supreme Court, New York County, September 7, 1927.

Trusts — testamentary trusts — removal of trustees — will devised bank stock in trust and provided it should not be sold without consent of president and cashier of bank — one trustee became president of one bank, and other trustee of other bank whose stock was held in trust — trustees tried to procure consent of beneficiaries to sell — personal interest of trustees is against interest of trust — trustees removed — complete relief cannot be obtained in Surrogate's Court — Supreme Court has jurisdiction — temporary injunction restraining sale of stock granted.

This is an action in the Supreme Court for the removal of testamentary trustees and an application for a temporary injunction restraining the trustees from selling bank stock held as a part of the principal.   The complaint states a good cause of action for the removal of the trustees.   It appears that the testator devised stock of two banks to the trustees and provided that the stock should be sold only on the consent of the president and cashier of one of the banks. Shortly after the death of the testator one of the trustees became president of one of the banks and the other trustee became the president of the other bank. The trustees have endeavored to obtain the consent of the beneficiaries to the sale of the bank stock apparently for the purpose of keeping control of the stock so that when the remainders take effect the trustees will not lose their positions as presidents of the respective banks.   The allegations of the complaint lead to the conclusion that the trustees have been employing their office for their own personal benefit rather than for the best interests of the beneficiaries and even though that were not so their positions as presidents of the respective banks is such, in view of the provisions of the will, as to require their removal.

Since some of the grounds for removal which form the basis of the complaint are not included in the grounds for removal specified in the Surrogate's Court Act. the Supreme Court has jurisdiction of this action.

In view of all the facts alleged in the complaint the plaintiffs are entitled to a temporary injunction restraining the sale of any of the bank stock pending the trial of this action.

ACTION for removal of testamentary trustees. Motion by plaintiffs for temporary injunction. Application by defendants to dismiss complaint.

*Safford A. Crummey,* for the plaintiffs, for motion.

*John F. Halstead,* for the defendant Murray, opposed.

*Henry B. Merritt* [*Gustav Lange, Jr.,* of counsel], for the defendant Merritt, opposed.

LEVY, J. Plaintiffs' motion for a temporary injunction is met with an application by defendants to dismiss the complaint for insufficiency. That pleading discloses that the defendants are trustees of the residuary estate of George W. Murray, deceased, under his last will, testament and codicil; that at the time of his death the testator's estate was invested in realty and in bonds and stocks of various corporations, including stock of the National Bank of Orange County and the Goshen National Bank; that in paragraph "eighth" of the will the following provision is made: " * * * it is my Will and I so direct, that such investments as I may have at the time of my decease in the stocks and bonds of corporations, banks and trust companies be held and retained (during the lifetime of my two daughters) by my said Executor and Trustee, and that the same be not disposed of by him without the written consent of the persons who may then be the President and Cashier of the National Bank of Orange County. It being my purpose and intention that my said Executor and Trustee shall hold and retain such securities in the said Corporations above mentioned for the best interests of my estate and of such corporations until such time or times as my said Executor and Trustee and the then President and Cashier of the National Bank of Orange County shall deem it best and advisable to dispose of the same;" that the residuary estate is held in trust by the defendants for the plaintiffs Madeleine Murray and Katharine D. Crummey as life tenants of the income, the other plaintiffs being the remaindermen; that the stock of the National Bank of Orange County held by the defendants as trustees, together with other stock owned by members of the family of defendant Francis W. Murray, Jr., amounts to more than three-fourths of the capital stock of that institution; that the stock of the Goshen National Bank held by the defendants as trustees represents a majority of its capital stock; and that immediately after the testator's death defendant Francis W. Murray,

Jr., was elected president of the National Bank of Orange County, and defendant Joseph Merritt was elected president of the Goshen National Bank, *the election of both being brought about by use of the stock held by them as trustees.*

The complaint then proceeds to make various charges against the defendants as follows: That although the condition of both banks has improved substantially since the testator's death — the dividend rate on stock of the National Bank of Orange County having been raised to twenty-five per cent, and on stock of the Goshen National Bank maintained at six per cent — the defendants have been constantly seeking to induce the life tenants to consent to the sale of the estate's holdings in those securities; that in January, 1924, defendants succeeded in obtaining their consent to the disposal of ninety-three shares of stock of the National Bank of Orange County at $100 per share, without disclosing to them that the real value of the bank's assets exceeded the book value by a considerable amount; that defendants' efforts to procure a consent to the sale of the remaining shares were attended by similar non-disclosure, and, indeed, with a request that the consent (1) be " without restriction," so that defendant Francis W. Murray, Jr., might be enabled to personally buy the stock of the banks during the life of the trust without criticism, and (2) permit a sale to persons whose identity was not revealed, nor intended to be; that defendant Merritt admitted that defendant Murray was anxious about his future as president and director of the bank, apprehending that when the trust terminated the remaindermen would turn him out of office; that the defendants have been threatening to sell the bank stocks in one block, the consummation of which would result in a substantial loss to the estate in view of the fact that large quantities of stock cannot be sold at one time for anything even approaching their real value; that by reason of his position as president and director of the National Bank of Orange County and his ownership of stock therein, the defendant Francis W. Murray, Jr., cannot possess or exercise an unbiased judgment as to the desirability of disposing of the bank stocks owned by the estate, and that the judgment of the present cashier of the National Bank of Orange County cannot be impartial because he holds office by the favor of the president and is subject to the latter's control. It is further alleged that the will prohibits the defendants from selling any of the bank stocks without the consent of the life tenants, and that the defendants' threats to dispose of the securities without such consent are tantamount to a declaration on their part of an intention to disobey the directions of the will and thereby commit a breach of trust. Accordingly, judgment is

demanded, *inter alia*, for the removal of defendants as trustees and the appointment of substitutes in their place.

It is unnecessary, for the purposes of the motion to dismiss the complaint, to determine whether or not paragraph " eighth " of the will prohibits the defendants from disposing of the bank stocks during the lives of the life tenants without their consent. Assuming that it does not, the complaint nevertheless, in my opinion, contains sufficient allegations to establish a *prima facie* cause of action for the defendants' removal. If the allegations in the pleading be regarded as true — as they must be on a motion of this character — the defendants appear to have been employing their office for their own immediate aggrandizement, or at least for the personal benefit of one of them, rather than for the best interests of the beneficiaries. But even if they have been acting in all good faith it would seem that the circumstances pointed out require their removal and the appointment of substitute trustees. In *Pyle* v. *Pyle* (137 App. Div. 568; affd., without opinion, 199 N. Y. 538) the testator's brother and his widow were testamentary trustees; the testator and his brother had been partners in business, and after the former's death the business was incorporated pursuant to a previous agreement between the brothers and the provisions of a codicil to the will; the stock was equally divided, one-half being retained by the brother for himself and one-half by the brother and widow as trustees of the decedent's estate; the brother was elected president at a certain salary, and although the widow subsequently objected to the continuance of the salary, she could not render her objection effectual in view of the deadlock occasioned by the disagreement of the trustees. She thereupon sued to remove the brother as trustee, setting forth these facts in her complaint. The Appellate Division held that a good cause of action was stated, declaring (at pp. 572, 573): " It is a fundamental rule relating to the acts of a testamentary trustee that he must not only act for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him, for himself. He owes an undivided duty to his beneficiary, and he must not, under any circumstances, place himself in a position whereby his personal interest will come in conflict with the interest of his *cestui que trust*. (Pom. Eq. Juris. §§ 1075–1077; Chaplin on Express Trusts & Powers, § 193; *Matter of Hirsch, No. 1*, 116 App. Div. 367; affd., 188 N. Y. 584.) The purpose sought to be secured by this rule of law is to require a trustee to assume a position where his every act is above suspicion and the trust estate, and it alone, can receive not only his best services, but his unbiased and uninfluenced judgment. When he

has acted otherwise, or when he has placed himself in such a position that his personal interest has or may come in conflict with his interest as trustee, then, so far as I have been able to discover, the court never hesitates to remove him. Under such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair. It stops the inquiry when the relation is disclosed. (*Munson v. S., G. & C. R. R. Co.*, 103 N. Y. 58.) The appellant personally owns one-half the capital stock of the corporation, from which he is receiving a salary of $25,000 a year as its president. He and the plaintiff as trustees of his brother's estate own the other half. The disagreement which has arisen between the two trustees, in effect, disfranchises their stock, the plaintiff insisting on voting it one way and he the other, the effect of which is to give him the actual control of the corporation by virtue of the stock which he owns personally. By accepting a salary as president of the corporation he has placed himself in a position whereby his personal interest may or has come directly in conflict with and to a certain extent antagonistic to his interest as trustee. It is not necessary to determine that he has acted in bad faith or received from the corporation a sum in excess of what he would have been legally entitled to if he had been selected as president of the corporation had he not been a trustee of an estate holding one-half of the capital stock. One-half of the salary paid to him diminishes to that extent what would otherwise be paid to the beneficiaries of the trust which he represents, and to this extent at least he is not in a position to so act that his personal interest does not come in conflict with his interest as trustee. He ought not to have placed himself in such position and having done so ought not to be permitted to act as trustee."

Similarly here the position of Francis W. Murray, Jr., as president, director and stockholder of the National Bank of Orange County would seem to place him in a position " whereby his personal interest may or has come directly in conflict with and to a certain extent antagonistic to his interest as trustee." His desire to retain the position and the salary which goes with it may influence him to dispose to friendly interests stock held by the estate which otherwise might be voted in such manner as to cause him embarrassment, if not more substantial discomfiture. Likewise, the position of Merritt as president of the Goshen Bank and as director and stockholder of both banks may well lead to a conflict between his individual and his representative interests. Obviously the plaintiffs are entitled to have their property administered by trustees who are entirely at the service of their trust. They may well demand that these functionaries acting in highly fiduciary

capacity be sterling men, fit and conscientious, and, like Cæsar's wife, at no time the proper subject of doubt or suspicion.

The point made by the defendants that where complete relief can be had in the Surrogate's Court this court will refuse to take cognizance of the action, ignores the circumstance that the Surrogate's Court has only such power as is conferred upon it by statute, and that at least some of the grounds for removal which form the basis of the complaint here are not included among the grounds for removal specified in section 99 of the Surrogate's Court Act. The *Pyle* case contains a rather decisive answer to defendants' contention in this connection (at pp. 571, 572): " It is urged the judgment appealed from should be reversed because the complaint fails to show that complete relief cannot be obtained in the Surrogate's Court. There is no doubt that a Surrogate's Court has the power, under section 2817 of the Code of Civil Procedure, to remove a testamentary trustee when there exists any of the conditions set forth in such section. (*Matter of Hirsch, No. 1*, 116 App. Div. 367; affd., 188 N. Y. 584.) A Surrogate's Court has only such power as is given to it by statute, and this power was conferred upon it by chapter 482 of the Laws of 1871. (*Savage* v. *Gould*, 60 How. Pr. 234.) The rule seems to be quite well settled that where complete relief can be obtained in the Surrogate's Court, the Supreme Court will refuse to take cognizance of an action; that, before it will do so, facts must be set out in the complaint sufficient to show that adequate relief cannot be obtained except in the Supreme Court. (*Borrowe* v. *Corbin*, 31 App. Div. 172; affd., 165 N. Y. 634; *Citizens' Central Nat. Bank* v. *Toplitz*, 113 App. Div. 73; affd., 188 N. Y. 634; *Matter of Smith*, 120 App. Div. 199; *Post* v. *Ingraham*, 122 id. 738.) *But it is at least doubtful if the question whether it will take jurisdiction of an action where complete relief can be obtained in the Surrogate's Court can be raised by demurrer to a complaint cn the ground that it does not state facts sufficient to constitute a cause of action. The question seems to have been decided otherwise by this court. (Mildeberger v. Franklin,* 130 App. Div. 860.) *However, that question is not here necessarily involved.* A Surrogate's Court can remove a testamentary trustee only for some one or all of the reasons stated in the section of the Code referred to, which are disqualification, incompetency which renders him unfit for the due execution of the trust, or some affirmative act to the detriment of the trust estate or its management. The Supreme Court has power to remove a testamentary trustee not only for the reasons which would justify such action in the Surrogate's Court, but also ' for any other cause.' (Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 112).

So if it be assumed that the Surrogate's Court might remove a trustee for certain reasons, it does not follow that a complaint would be defective in the Supreme Court because it might conclude to remove him for other reasons, concerning which the surrogate would have no power." (Italics mine.)

In discussing the power of the Supreme Court to remove testamentary trustees this court in *Gould* v. *Gould* (108 Misc. 42; affd., 203 App. Div. 807) said (at p. 60), with reference to section 112 of the Real Property Law: " The court does not derive its power to remove a testamentary trustee from this statute, as is claimed by counsel for the respondent. The court's power comes from the Constitution, which specifically grants it.

" ' General jurisdiction in law and equity ' is given by the Constitution, and the power to remove a testamentary trustee is peculiarly an equitable power which has always been exercised by the English Court of Chancery and the Supreme Court of this State. This power cannot be limited by the Legislature. [*People ex rel. Mayor* v. *Nichols*], 79 N. Y. 582, 590."

It still remains, however, to consider plaintiffs' motion for an injunction restraining the defendants until the determination of the action from selling any part of the bank stocks. Whatever may be thought of the necessity of obtaining the consent of the two life tenants to such a sale, this much is clear, that there is no *duty* upon the defendants to dispose of the stocks and that, under the terms of the will, they may continue to hold them without fear of criticism or surcharge for so doing. Under such circumstances their apparent anxiety to dispose of the stocks, one of which at least is yielding a far greater income than could reasonably be expected from lawful investments into which the proceeds of the sale would have to be converted, tends to lend color to plaintiffs' indictment that the defendants are actuated by ulterior motives or self interest. Significant, too, were the defendants' efforts to obtain a consent " without restriction " to a sale to unrevealed purchasers " so that defendant Francis W. Murray, Jr., might be able to acquire stock during the life of the trust without criticism." It is needless, however, to dwell further on the character of the defendants' motives, in view of the somewhat anomalous statement of defendant Merritt that " as both Trustees were directors of the National Bank of Orange County, I appreciated the fact that we could not well dispose of this stock without application to the Court or without the consent of all the beneficiaries, after they had been placed in possession of all the information in regard to the condition of both Banks," and in view further of the seemingly generous declaration by defendant Murray, that " I would not at

any time either in the past or at any future time, sell this stock without the approval of the life tenants or authority of the court, so long as Mr. Merritt and myself continue as either officer or director of the Bank." Indeed, the learned surrogate of Orange county has already expressed the opinion that the circumstance that one of the trustees is also president of the National Bank of Orange County and one of the officers whose consent to a sale must be obtained by the trustees, and that the other trustee is also a director in the same bank, warranted the surrogate in acting if he had the power. He held, however, that he did not have the power to advise the trustees as to the disposition of the stock. Since the situation clearly calls for judicial intervention there is no reason why it should not be obtained in this action, especially in the light of the holding by the surrogate. No harm can be done if the *status quo* is maintained by granting the injunction, whereas irreparable injury may perhaps result if this relief is denied. The fact should not be lost sight of that the plaintiffs here are the beneficiaries of the trust funds held by the defendants and are, therefore, the real parties in interest.

The motion for a temporary injunction is granted, and the motion to dismiss the complaint denied, with ten dollars costs. Settle orders.