### 8308. LESTER, administrator, *v.* TOOLE.

1. An administrator is entitled to retain the share of an heir, in money derived from the sale of the realty belonging to the decedent's estate, in payment of a debt which the heir owes to the estate, as against, and in preference to, the claim of an assignee or purchaser from the heir.

2. Under the statutes of this State, as at common law, the title to realty, upon the death of the owner, descends directly and vests immediately in his heirs at law. It does not, as at common law, vest in the heir at law absolutely, but the descent may be intercepted, and the possession claimed and held by the administrator for the purposes of administration.

3. The realty of the intestate may be sold by the administrator for the payment of the debts of the intestate and for distribution to his heirs.

4. Commissions earned by the administrator or personal representative of the estate are a part of "the necessary expenses of administration," and, in a settlement with the heirs, the administrator is not chargeable with failure to apply his commissions to a debt due by him to the estate, regardless of the insolvency of the administrator.

5. Commissions are regarded, under the statute, as costs, and not as a part of the distributive share of an heir who is also the administrator of the estate. Hence, the application of the commissions to the personal use of the administrator does not work inequality in the distribution of the estate.

6. The jurisdiction and power of the court of ordinary is· as broad as that of a court of equity in the settlement of an estate.

7. The court erred in holding that the debtor administrator was required to apply his commissions to the payment of his indebtedness to the estate, and direction is given that the verdict be molded accordingly. Otherwise the verdict directed was demanded.

DECIDED JUNE 27, 1917.

Appeal; from Burke superior court—Judge Henry C. Hammond. October 3, 1916.

Mrs. M. E. Lester died intestate in the early part of 1914. Her entire estate consisted of a tract of land in Burke county, Georgia. S. H. Lester was appointed administrator of the estate, and, as such, collected and held rents of the estate for the years 1914 and 1915. In the latter year he obtained an order from the ordinary authorizing him to sell the lands of the estate for the purpose of paying the debts and making legal distribution among the heirs. The lands were accordingly sold. At the May term, 1916, he filed what purported to be his final returns, and asked that the heirs at law be cited to a settlement. Mrs. Pearl Toole, a daughter of the intestate and sister of the administrator, caveated the returns, upon the following grounds: that she received $183.87 less than her distributive share, as shown by the account submitted by the administrator; that the administrator had improperly recognized an assignment made by Howard Lester, an insolvent heir of the estate, who, at the time of the death of the intestate and of the assignment of his interest in the estate, owed the estate more than his distributive share; and that the administrator owed the estate more than his distributive share and commissions as administrator, and had no right to retain his commissions. She prayed that her distributive share should be increased by her interest as an heir in the amount paid the assignee of Howard Lester, and in the amount retained by the administrator as commissions. From the decision of the ordinary the administrator entered an appeal to the superior court.

Before the court and jury on appeal Mrs. Pearl Toole introduced the final return of the administrator. This return showed, that the administrator was individually indebted to the estate in the sum of $2,148.48, and surrendered his sixth interest in the estate of the value of $808.87, as a payment thereon, but retained as commissions, earned as administrator, the sum of $410.32. The

return further showed that the administrator had recognized an assignment or transfer by deed, made by Howard Lester, a son and heir of the intestate, to one Roberts, and had paid to Roberts the sum of $808.87 for his interest in the estate. The return did not show any indebtedness due by Howard Lester to the estate. A certified copy of the petition in bankruptcy filed by Howard Lester on November 20, 1913, was introduced in evidence. This petition showed an indebtedness of $1,000 by the applicant to the intestate. It appeared that the bankrupt had no assets, that no trustee was appointed, and that he had not filed an application for discharge and the time within which he could have done so had expired when the administrator paid over to Roberts, the assignee, the interest of Howard Lester in the estate. The administrator introduced in evidence a bond for title, signed by Howard Lester, with Roberts as grantee, dated May 15, 1914, and duly recorded, consideration $1,250, upon payment of which a sixth undivided interest in the lands of the estate of Mrs. M. E. Lester was to be conveyed; also a deed to Roberts signed by Howard Lester, dated April 12, 1915, and duly recorded, conveying in fee simple the property described in the bond; also a certificate, signed by the clerk of the superior court of Emanuel county, to the effect that he had examined the records in his office, and found no property in S. H. Lester, and that certain unsatisfied executions against him stood open upon the dockets in his office; and that the tax digest of Emanuel county disclosed that S. H. Lester returned no property for taxation. It was admitted that $183.87 of the distributive share of Mrs. Toole, according to the account of the administrator, had not been paid. At the conclusion of the evidence the court held that the administrator was liable to Mrs. Toole for her interest, as one of the heirs, in commissions retained by him, and that the commissions should be applied to the administrator's individual debt to the estate; that the assignment made by Howard Lester to Roberts was null and void, and that the administrator was liable to Mrs. Toole for her share of the amount paid to Roberts. A verdict for these amounts, including the $183.87 admitted to be due her, was directed for Mrs. Toole. The administrator excepted.

*E. V. Heath*, for plaintiff in error. *B. J. Fowler*, contra.

GEORGE, J. (After stating the foregoing facts.) 1-3. The first question presented may be stated as follows: Is the assignment

of an undivided interest in the realty of an estate by an insolvent debtor heir good against other distributee heirs, the lands having been reduced to money for the payment of the debts of the intestate and for distribution among the heirs? An administrator is required, by section 4002 of the Civil Code (1910), "to place in suit every debt due the estate which he may reasonably expect to recover; and if by his neglect or indulgence the debt is barred by the lapse of time, or is otherwise lost to the estate, he is responsible therefor." An administrator is bound to exercise due diligenec in the administration of the estate. If a debt due to the estate from an insolvent debtor heir may be deducted from his distributive share of the proceeds of realty which has been sold in process of administration, or if, in the exercise of due diligence, the administrator can collect the debt out of the proceeds of real estate in his hands for the purpose of administration, it must be conceded that liability will attach to the administrator for his failure to retain the debt in the first instance, or to collect it in the second instance. It is generally recognized doctrine that the distributive share derived from the personal property of an heir indebted to an estate may be retained, without more, by the administrator in payment of the debt. The same doctrine has also been applied, virtually without exception, as against a debtor legatee. It is said that this doctrine is founded upon the duty of the administrator to collect the debts due the estate. Personal property descends directly to the administrator, and it is his duty to reduce such property to cash, for the purposes of administration. The heir has no title to personal estate, except his right to a distributive share in the surplus after the payment of all debts and the expenses of administration. Citation of authority in support of the foregoing is unnecessary. The right and the duty of the administrator to apply the distributive share or interest of an heir in the personal estate of an intestate to the debts of the heir is based upon the doctrine of retainer, and not so much upon the right of set-off proper. It would therefore follow that the administrator has the right, and it is his duty, to reserve and take so much of the share of the heir, derived from the personal estate of the intestate, as may be sufficient to satisfy the debt of the heir to the estate.

Many courts have applied this general doctrine of retainer to the

share of a debtor heir derived from the sale of real estate. Oxsheer v. Nave, 90 Tex. Civ. App. 568 (40 S. W. 7, 37 L. R. A. 98).; Fiscus v. Moore, 121 Ind. 547 (23 N. E. 362, 7 L. R. A. 235); Powers v. Morrison, 88 Tex. 133 (30 S. W. 851, 28 L. R. A. 521, 53 Am. St. R. 738); Hopkins v. Thompson, 73 Mo. App. 401; Brown v. Mattingly, 91 Ky. 275 (15 S. W. 353); Keever v. Hunter, 62 Ohio St. 616 (57 N. E. 454). The theory of advancement seems to be adopted by the Ohio court. The Supreme Court of Alabama has declared: "Where an heir is indebted to his ancestor while living, and continues indebted to his estate after his death, the other heirs of the ancestor have an equitable lien upon the lands of decedent for the debt which said heir owes the estate, which lien is superior in equity to any right the debtor heir, or persons claiming under or through him by operation of law or otherwise, would, but for his indebtedness, have had in the descended lands." This lien of the administrator is held to be superior to that of a judgment creditor of the heir. Streety v. McCurdy, 104 Ala. 493 (16 So. 686). According to the doctrine enunciated by other courts, this right of retainer applies only to specific legacies and interests in the personal estate of the decedent. It is declared that the heir's distributive share in the realty can not be retained against his indebtedness due the estate, even where the land has been reduced to money. According to this doctrine, the debt of the heir must be collected by proceedings brought in the manner usual for collecting any other indebtedness due the estate, and it is a race of diligence between the administrator and other creditors of the heir. The reason usually given for this limitation of the general doctrine of retainer is that the real estate descends directly to the heirs upon the death of the intestate, and vests in them, subject to be divested only for the payment of the debts of the estate. In case of the death of one testate, it is held that this rule applies because the testator, by his failure to provide for the payment of the debt out of the lands devised to the heir, evinces an intention to make the devise unconditional. LaFoy v. LaFoy, 43 N. J. Eq. 206 (10 Atl. 266, 3 Am. St. R. 302); Smith v. Kearney, 2 Barb. Ch. (N. Y.) 523; Hancock v. Hubbard, 19 Pick. (Mass.) 167; Dearborn v. Preston, 7 Allen (Mass.) 192. "In the majority of jurisdictions, however, this exception in regard to real estate as to the general rule that an executor or ad-

ministrator may retain a debt due from an heir or legatee is not recognized; and hence it is that a debt due the estate from an heir may be deducted from his distributive share of the proceeds of real estate which has. been sold in process of administration." 11 R. C. L.; § 279, p. 247.

So far as we have been able to ascertain, the question seems to be an open one in this State. There are decisions of the Supreme Court that bear more or less remotely upon the question; but the courts of this State, so far as we know, have not been called upon to announce the rule upon this precise question. On general principles· it would seem that the right of an heir to a distributive share in the estate, real or personal, or both, is subordinate from the beginning to the distributee's indebtedness to the estate. The debt due by an heir to the estate is a part of the estate, and is subject to the law of distribution and descent. The debtor heir must either pay.his debt to the estate or take his share in the debt as a part of his share in the estate. Equality in the distribution of an estate demands the collection of all claims due by the distributees to the estate. Section 3929 of the Civil Code provides: "Upon the death of the owner of any estate in realty, which estate survives him, the title vests immediately in his heirs at law. The title to all other property owned by him vests in the administrator of his estate for the benefit of the heirs and creditors." The heir does not take an absolute title in the realty, as at common law. The descent is subject to be intercepted, and the title divested, when it becomes necessary for the administrator to sell the land for the purpose of paying the debts of the ancestor. In addition, the laws of this State expressly authorize the interception of the heir's title to the realty for the purpose of distribution among the heirs. At common law the title to the realty descended to and vested absolutely in the heir. It could not be intercepted for the purpose of paying the debts of the ancestor, or for the purpose of making distribution among the heirs. Under the laws of this State the realty is as much subject to the payment of the debts of the ancestor as his personal estate. It is true that the debts must be paid out of the personal property, if that be sufficient, yet if the administrator should waste the whole of the personal property, no reason appears why the creditors can not have recourse against the realty. When the real estate, in process of administra-

tion, is lawfully reduced to money, the money is in the hands of the administrator for precisely the same purposes as money arising from the sale of personalty. For certain purposes of administration and succession the money derived from the sale of the realty retains the qualities of the land, still it is money, and only money, in the hands of the administrator. Civil Code (1910), § 4040. The courts all agree that, since the title to the personal estate vests in the personal representative of the ancestor, the right of retainer as against the debtor heir exists. It would seem logically to follow that if the title to the realty, which otherwise would descend directly to and vest in the heir, is intercepted, and the lands sold by the personal representative for the payments of debts and distribution among the heirs, the money derived from the sale of the realty may likewise be retained by the administrator against any indebtedness due the estate by an heir. In the case of the personal property the title is cast, by operation of law, upon the administrator. In the case of realty the title is likewise cast, by operation of law, upon the administrator, whenever it becomes necessary for him to sell the realty for the purpose of paying the debts or making distribution. When the title to the realty is cast upon the administrator, and when he has reduced the realty to cash, no logical reason occurs to us why the same rule as to personalty does not apply.

If this conclusion be correct (and we think the rule a just and necessary one, in order to preserve the equality of distribution), the sale or assignment by the debtor heir of his interest in the realty of the estate can not alter the rule. A stranger has not the power to embarrass the administrator in the settlement of an estate by dealing directly with the heir. Until an estate is finally settled, every third person is bound to know that the sale of the realty may become necessary for the purpose of paying the debts of the decedent or for the purpose of making equal distribution among the heirs. He is therefore bound to know that the land may be sold and may be converted into money, and, when converted into money, that the personal representative has the right to retain so much from any distributive share as may be necessary to extinguish the debt due by such distributee to the estate. We repeat, the money derived from the sale of the realty does not lose the character and quality of realty, so far as the laws of dis-

tribution and descent are concerned, but both the realty and the personalty descend to the heirs at law in like proportions, in the case of intestacy. The assignee of an heir does not, as against the administrator, hold title to any interest in the land. The heir has no superior title to the administrator, whenever it becomes necessary for the administrator to sell the lands in the process of administration. What the assignee has is a claim to the interest of his assignor in the assets of the estate, and he takes that interest precisely as his assignor held it. The facts in the case at bar clearly illustrate these principles. The assignment by Howard Lester was made before the sale of the land. The deed conveying his interest to Roberts was duly recorded. His title was completely divested when the administrator, under proper authority, took possession of and sold the land. The assignee, therefore, can claim only the interest of the assignor heir in the estate. The interest of the heir is an equal distributive share in the entire assets of the estate. If he has already received, during the lifetime of the intestate, all of his distributive share, he can claim no more. Upon a demand by a debtor heir for his distributive share in the estate, it is a just and equitable answer that he already has received and still retains some portion or all of his share in the estate. See, in this connection, Fiscus *v.* Moore, supra; Streety *v.* McCurdy, supra. The foregoing leads to this conclusion: The administrator has the right, and it is his duty, to subject the money in his hands, derived from the sale of his intestate's lands, to the payment of a debt due the estate from an heir, in preference to the claims of an assignee or purchaser from the heir.

4, 5, 7. The question next for consideration may be stated as follows: Will an administrator, who is also a distributee, and who is indebted to the estate in excess of the value of his distributive share and his commissions as administrator, be allowed to retain his commissions to his own use, or should such commissions be applied upon his indebtedness to the estate? Under the common law, when a person indebted to the deceased qualified as his administrator, the debt was ipso facto extinguished. In equity the debt was considered as paid, and became at once assets in the hands of the executor or administrator for the payment of debts and legacies, and for the benefit of heirs or legatees, and both the personal representative and his sureties were chargeable

with the amount thereof in his accounts. The rule announced and followed in many jurisdictions was that the administrator and his bondsmen were chargeable with the amount of such debt of the administrator to the estate, regardless of the financial condition of the administrator. This was a harsh rule. Many, perhaps most, of the States have departed therefrom. In equity and upon just principle it would seem that both the administrator and his sureties should be allowed to show that at the time of the appointment and qualification of the administrator the debt due by him to the estate was desperate. In other words, proof of the actual insolvency of the administrator, and his inability to pay at the time of his appointment as such and to the date of his final discharge, would appear to be sufficient to relieve both the administrator and his bondsmen from liability. Upon the appointment of one as administrator of an estate, prima facie, at least, a debt due by him to the estate should be considered as paid. It is, therefore, urged that, inasmuch as the administrator, regardless of his insolvency at the time of his appointment and his consequent inability to pay his debt to the estate, has earned commissions in the administration of the estate, such commissions should be applied to his debt to the estate. Under the law of this State, commissions due the administrator, or personal representative of an estate, are considered as part of the costs, and fall under the head of "necessary expenses of administration." The "necessary expenses of administration," including the commissions of the administrator or personal representative, are given priority over taxes or other debts due the State or the United States by the decedent; over debts due by the deceased as executor, administrator or guardian, for the estate committed to him as such, or any debt due by the deceased as trustee; over judgment creditors and over lien creditors. Civil Code (1910), § 4000. We think it necessarily follows that the commissions earned by the administrator have priority over the claim of the heir to his distributive share, and every part thereof, in the estate. It is true that the administrator owing the estate should, in good morals, pay it. It is also true that good morals would require him to pay his debt to the estate out of any funds, from whatever source derived, to which he was lawfully entitled. However, since his commissions are regarded as a part of the necessary expenses of administration,

and since, in legal contemplation, such commissions are considered appropriated as earned, he can not be required to apply such commissions to his debt due the estate, in his settlement with the heirs. The contrary rule would militate against the speedy and diligent administration of the estate.

6. It is urged that if the debtor administrator was liable for commissions earned and retained by him to his own use, and for the amount paid the assignee of the insolvent debtor heir, a verdict directed for such by the judge of the superior court, on appeal from the court of ordinary, is void and of no effect. It is said that a bill in equity is essential. It is contended that the superior court, on the trial of the appeal, had no broader powers than the court of ordinary. We concede that this is true. In our view, however, the court of ordinary had ample power to deal with the situation. The jurisdiction and power of that court is as broad as that of a court of equity, in the settlement of an estate. Indeed, the jurisdiction of the ordinary is original, and that of a court of equity concurrent. See *Hood* v. *Perry,* 73 *Ga.* 319, 322. Resort to equity is, in the instant case, unnecessary. The administrator is bound to exercise due diligence in the administration of the estate. He is liable for a failure to exercise such diligence. The ordinary may charge him with any loss occasioned by reason of his failure in this regard. If it were his right and duty to retain the sum paid the assignee of Howard Lester, he is thereby accountable to the heir for her respective interest in the amount thus improperly and negligently paid. She may have her complete relief in the court of ordinary.

From the foregoing it follows that the judge of the superior court erred in directing a verdict for the interest of Mrs. Toole in the sum of money retained as commissions and applied by the administrator to his personal use. In this respect only was there error. This error will not require a reversal, but the judgment will be

*Affirmed with direction. Wade, C. J., and Luke, J., concur.*