WHATLEY *v.* MUSSELWHITE *et. al.*

92

No. 12932.   October 11, 1939.

*Dan S. Beeland* and *Homer Beeland*, for plaintiff.

*C. C. Stone, G. C. Robinson,* and *C. B. Marshall,* for defendants.

REID, Chief Justice.  The question, as shown by the foregoing statement, is whether or not the general demurrers should have been sustained. It is to be remembered that no exception was taken by the defendants to the order of the court overruling the general grounds of the first demurrer. So we must first determine the controversy as to whether the court had the right to pass upon these grounds after the subsequent filing of the several amendments. "An amendment to a petition, or plea, or answer, which materially changes the cause of action or defense, *opens the petition,* plea, or answer, as amended, to demurrer or plea. The opposite party shall be *allowed a reasonable time* for answering such amendment." Code, § 81-1312. Under this section the trial court could have considered all the amendments, because they were all presented

after the first demurrer was filed, and were all allowed subject to demurrer. In the order complained of the court said: "On the call of the above-stated case . . at this the April term, 1939, of Taylor superior court, plaintiff tendered *three amendments* . . which were allowed subject to demurrer." That order did not designate specifically those amendments. The last two of the amendments, one of which struck the names of the administrators and their bondsman as parties defendant, were presented on April 3, 1939, according to the court's order allowing them. These are the two which are dated. It is to be remembered that the other amendment in this record, which appears to have been sworn to on December 15, 1937, bears no date of presentation or of allowance. Counsel for the defendants state in their brief that this amendment was presented on April 5, 1939, and was one of the three which the court passed on. The plaintiffs have not refuted this statement. Irrespective, however, of this contention, and since the record does not disclose the date on which that particular amendment was presented or allowed, and since the judge passed upon three amendments, and not two, at the time he sustained the demurrers, we must conclude that he had under consideration the amendment which appears to have been sworn to on December 5, 1937. As before stated, the court could have considered all of the amendments in determining whether or not there was such material change in the plaintiff's cause of action as to open the petition to demurrer; but in passing on that question, we shall consider only the amendments which were presented on April 3, 1939, and that amendment which was sworn to as of December 15, 1937.

The petition alleged: "The said grantees [defendants] should be deemed and treated as trustees for the respective shares of said debtor legatees excluded from said deed, and thereupon plaintiff's lien upon the said shares should be set up and established on the respective interests of said debtor in said lands," etc. One of the prayers of the petition was as follows: "That plaintiff's demands against the said J. W. Musselwhite, Frank Musselwhite, Clara Musselwhite, and J. A. Musselwhite be set and established as prior liens as to their full shares as legatees under the will of their father, the said W. M. Musselwhite." So that all the relief sought was judgment against the debtor legatees, and that the plaintiff be decreed to have a lien, presumably upon the land. No other relief of

any nature was prayed for in the original petition against the defendants in error, and no accounting was prayed.

The amendment sworn to on December 15, 1937, which we have concluded the court passed on in the order sustaining the general demurrers, set out that the purchase of the real estate was by implication the purchase of all the legatees, including the assignees of said estate. The petition likewise alleged that all of said legatees should share in a sum of money which was paid to the nine legatees, defendants in error. In other words, the petition alleged that these four debtor legatees should be considered as purchasers, and should be considered as being entitled to share in this sum of money. By that amendment the plaintiff prayed for "judgment against said *administrators* for such amount." There was no prayer for judgment against the defendants in error. We think that this constituted a material change in the pleadings. The next amendment was one of those presented on April 3, 1939, claiming four thirteenths of the rental value of the land conveyed by the administrators, as to the defendants, for a period of six years; also for four thirteenths of the distribution in money made to the nine legatees; and for the first time the plaintiff prayed for judgment against defendants. This constituted a material change in the pleadings. In view of the character of relief prayed for, it also was a substantial change in the state of the pleadings when the plaintiff presented another amendment by striking the administrators and their bondsman, by setting out that these parties, against whom he had prayed substantial relief, had pendente lite settled their liability on plaintiff's cause of action. We conclude that the effect of these several changes in the pleadings was such as to permit the court, as was done, to consider and pass upon the demurrers which were sustained. See *Kelly* v. *Strouse*, 116 *Ga.* 872 (43 S. E. 280)'.

■ Having held that the amendments opened the petition to demurrer, then the question is, did it, with the amendments, set out a cause of action? In so far as the petition as amended sought to subject or lay claim to the property of the four debtor legatees as their property, it is to be remembered that before its sale the title to said property vested in the executors, after their appointment, and afterward in the administrators d. b. n. c. t. a., it not appearing that there had been any assent on their part to the legacies of these four children of the deceased. "All property, both

real and personal, being assets to pay debts, no devise or legacy passes the title until the assent of the executor is given to such devise or legacy." Code, § 113-801. This section applies with equal force to an administrator cum testamento annexo. See *Martin* v. *Walker,* 94 *Ga.* 477 (2) (21 S. E. 223). There is no allegation that either the executors before they resigned, or the administrators appointed afterwards, ever assented to the legacies of these four debtor heirs. The situation presented in ruling on pleadings in this case is somewhat different from that confronted by the court in *Walker* v. *Horton,* 184 *Ga.* 429 (191 S. E. 462), where an effort was made to subject a legacy to certain claims against the legatee. An issue was made as to whether there had been such assent to the legacy as would permit the passing of title. The question whether or not the executor did assent to the legacy was submitted to a jury; and this court held that the jury was authorized to find, as it did, that such assent had been given; and that the interest of the heir and legatee was subject to a judgment which was rendered against him in favor of the creditor. In that case the will bequeathed certain specific property to the heir, and it appeared that he had entered upon it and taken possession thereof, this being one of the circumstances which was considered sufficient to warrant the jury in finding that the executor had given assent. The effect of that decision was that assent by the executor to the legacy in such a case as the one now before us was necessary, before the interest of the legatee could be in such a proceeding subjected to his individual debts. The statement in the opinion, "Where after an assent to a devise the property is levied on to satisfy a judgment against the devisee, the legal representative can not reclaim the property merely because the devisee is indebted to the estate or there are debts against the estate, pending the settlement of which assent could have been withheld," was predicated on the proposition, that, assent of the executor once being shown, there could not generally be a revocation, even in instances where the legatee was indebted to the estate. Authorities were cited to this effect.

The plaintiff's petition, taken in connection with the contract of sale attached to the amendment of March 22, 1938, shows that these debtor heirs under whom the plaintiff claims to hold were indebted to the extent of, if not more than, their interest or distrib-

utive share. It was alleged that the deed conveying the property was delivered to Hinton as escrow agent, to be held by him and delivered to the nine legatees (defendants) when all the debts of the estate had been paid and when *full settlement of the interest of all* the heirs of said estate had been legally effected. Hinton delivered the deed, and there is no allegation that he did not do his full duty or that he did not effect appropriate settlement in adjusting the interests of all the heirs. The contract to which all of the parties assented recited that "they have already received the full amount of their distributive shares in said estate, and that the nine heirs hereinabove mentioned are the only heirs to share in said estate." The purported facts so stated in the contract appearing in the amendment to the petition were not negatived or challenged anywhere. In *Lesler* v. *Toole,* 20 *Ga. App.* 381 (93 S. E. 55), it was held that a personal representative of an estate is entitled to retain the share of an heir or legatee in money derived from the sale of realty belonging to decedent's estate, for the purpose of paying a debt which the heir or legatee owes to the estate, as against and in preference to the claim of an assignee or purchaser from the heir. In the discussion in that case it appeared that the precise question there presented was: "Is the assignment of an undivided interest in the realty of an estate by an insolvent debtor heir good against other distributee heirs, the lands having been reduced to money for the payment of the debts . . and for distribution?" It was stated: "It is generally recognized doctrine that the distributive share derived from the personal property of an heir indebted to an estate may be retained, without more, by the administrator in payment of the debt. The same doctrine has also been applied, virtually without exception, as against a debtor legatee. . . Many courts have applied this general doctrine of retainer to the share of a debtor heir derived from the sale of real estate." See also cases cited in that opinion. The further statement was made: "In the case of the personal property the title is cast, by operation of law, upon the administrator. In the case of realty the title is likewise cast, by operation of law, upon the administrator, whenever it becomes necessary for him to sell the realty for the purpose of paying the debts or making distribution. When the title to the realty is cast upon the administrator, and when he has reduced the realty to cash, no logical reason occurs to us why

the same rule as to personalty does not apply. If this conclusion be correct (and we think the rule a just and necessary one, in order to preserve the equality of distribution), the sale or assignment by the debtor heir of his interest in the realty of the estate can not alter the rule. A stranger has not the power to embarrass the administrator in the settlement of an estate, by dealing directly with the heir. Until an estate is finally settled, every third person is bound to know that the sale of the realty may become necessary for the purpose of paying the debts of the decedent or for the purpose of making equal distribution among the heirs. He is therefore bound to know that the land may be sold and may be converted into money, and, when converted into money, that the personal representative has the right to retain so much from any distributive share as may be necessary to extinguish the debt due by such distributee to the estate. We repeat, the money derived from the sale of the realty does not lose the character and quality of realty, so far as the laws of distribution and descent are concerned, but both the realty and the personalty descend to the heirs at law in like proportions, in the case of intestacy. The assignee of an heir does not, as against the administrator, hold title to any interest in the land. The heir has no superior title to the administrator, whenever it becomes necessary for the administrator to sell the lands in the process of administration. What the assignee has is a claim to the interest of his assignor in the assets of the estate, and he takes that interest precisely as his assignor held it." The principle as quoted above from the opinion of the Court of Appeals delivered by Judge George was considered by him not to have been previously determined by the courts of this State, although he pointed out there had been some decisions of our courts bearing somewhat upon the question. In this connection we find, in *Reed* v. *Davis,* 95 *Ga.* 202 (22 S. E. 140), a somewhat similar situation where the will directed the sale by the executor, either publicly or privately, of specific realty for conversion into cash for certain purposes, and that upon the children of the testator coming of age or being married, the executor should turn over to them their portions of the estate. Some years later the executor conveyed a portion of the real estate to a daughter of the testator in a settlement with her of her interest in the estate under the will, she and her mother being, at the time, the only surviving devisees and legatees. It was

held, in the opinion by Mr. Justice Lumpkin, that under these circumstances "the legal title certainly remained in the executor until he divested himself of it in winding up the affairs of the estate. When he did part with it, he conveyed it to the testator's daughter," and that the widow never had any such interest in the property as could be subjected to the payment of her debts. *Lester* v. *Toole,* supra, was followed in *Haley* v. *Partain,* 31 *Ga. App.* 144 (120 S. E. 14), where it was said: "The right of an executor to appropriate the distributive share of one of the heirs of an estate to the payment of debts due by the heir to the testator is superior to the lien of a judgment against the heir." See also *Stephens* v. *Stone,* 46 *Ga. App.* 293 (167 S. E. 545), and *Walker* v. *Horton,* supra, where the *Lester* case was cited with approval. In *Greenwood* v. *Greenwood,* 178 *Ga.* 605 (173 S. E. 858), this court held that a representative of an estate is entitled to retain the share of an heir in payment of his debt to the estate, as against the claim of a judgment creditor of the heir. The principles hereinabove stated, and now approved under the facts in this case, apply to the claim of plaintiff, not only in respect to the land, but also in respect to the sum of money which it was claimed had been paid on distribution to the nine heirs who are defendants. In the foregoing discussion we have not overlooked the general allegations of fraud contained in the petition and amendments; but they must be considered in connection with what we have undertaken to set forth above as the *controlling* facts, and when so considered they do not overcome this bar to the relief sought by plaintiff.

■ What has been said substantially controls also as to the other grounds upon which the plaintiff rests his claim to relief. It is seen from the foregoing that just as the one fatal bar to the seizure of any property or funds as belonging to the four legatees is founded on the failure to show any interest which they had in the estate belonging the them, so it would likewise follow that no accounting could be had in the absence of a clear showing that there was something due. See *Gould* v. *Barrow,* 117 *Ga.* 458 (43 S. E. 702). Upon the same premise it must be said that there could be no trust established for the benefit of the assignee of the four debtor legatees, if, as we have held, the conveyance by the administrator was valid. The foregoing rulings render it unnecessary to determine the effect of an amendment striking the names of the administrators and

their bondsman as parties, on account of an alleged settlement with them; or to inquire into the merit of the various special demurrers.

*Judgment affirmed. All the Justices concur.*