PERDUE *et al. v.* McKENZIE, executrix.

No. 14207.   JULY 15, 1942.   REHEARING DENIED JULY 24, 25, 1942.

*James A. Branch* and *Thomas B. Branch Jr.,* for plaintiff.
*William G. Grant,* for defendant.

REID, C. J.   Certiorari was granted to review the decision of the Court of Appeals in this case, because of its importance as related to the administration of estates.   A full statement of the case, its history, pleadings, and the findings made by the auditor to whom it was referred while pending on appeal in the superior court, and the various questions in it may be found in the reported case. *McKenzie v. Perdue, 67 Ga. App.* 202 (19 S. E. 2d, 765).

■   It may be stated at the outset that the interest of the minor

in the estate involved came to him by the terms of a very short, simple will executed by his mother in 1925. By her will, outside of some small personal things, she disposed of her estate in two parts by two separate items. By item 3 she provided that her mother should have a life interest in half of her estate, the mother to receive the income therefrom; and, in effect, that if her son Graham Wooten Perdue should live to reach the age of twenty-one years, he should take the remainder in this half interest. There was a further provision as to where the property should go in case he did not so survive. This is the minor son involved in the litigation, to whom under item 4 the testatrix provided "the remaining one-half interest of my estate" should go, "in trust until he reaches the age of twenty-one years, with power in the trustee hereinafter appointed to use the income from this bequest, and so much of the corpus thereof as in his or her discretion is necessary in the support, maintenance, and suitable education of my said son. Upon his reaching the age of twenty-one (21) years, the trust herein created is to be dissolved, and he is to receive the bequest in fee simple. It is distinctly provided, however, that the executors of my will, in the exercise of their discretion, may, if in their opinion my said son is able and capable of managing his estate, dissolve this trust and turn the estate over to my son at any time subsequent to his eighteenth (18) birthday." It was then provided: "Should my son, Graham Wooten Perdue, die before he comes in this bequest in fee simple," the estate should go to certain others. By item 5 she appointed Ed M. McKenzie "trustee of the property of my son," and stated: "I also name him [McKenzie] as executor of this my last will and testament." She then provided for succession of "said executorship and trusteeship," the effect of this provision being that in case of succession the same person should serve in both capacities. Mrs. McKenzie was named and later qualified in succession of Ed M. McKenzie, and is the person against whom proceedings were brought in this case. The estate of Mrs. Perdue, the testatrix, through whom the minor acquired his interest, and of which the executor took possession, consisted mainly of a one-third undivided interest in a large plantation of several thousand acres; the present executrix being the owner of another one-third undivided interest, and her sister the owner of the remaining one-third undivided interest. As pointed out in the

previous report of the case, there was no provision in the will authorizing the executor to continue to hold the property as an undivided interest or to manage it jointly with that of the other interests.

Quite some time before the present proceeding was brought, certain parties at interest brought a partition proceeding in which a final decree of partition was entered, making division of this property in three parts of equal value, the executrix being a party to such proceeding and thus being awarded, and having vested in her as executrix, title to an equal portion of this property. Under the finding made by the auditor the executrix, in defiance of the decree in the partition proceeding, continued to operate the entire plantation as one joint enterprise, although it had been divided and she was the separate owner in her individual right of one third of it. It is to be noted, however, that the partition proceeding resulted in setting apart the one-third interest of Mrs. Perdue to her executrix, and did not reach any further division as between the mother of the testatrix, who took an undivided one-half interest under item 3 of the will, and the minor son who took the income of one-half interest of this one-third, and who might, if he reached the age of twenty-one years, or in certain events the age of eighteen years, take a fee-simple title thereto. So it may be said that after this partition proceeding the executrix held and managed this one-third interest so partitioned, as executrix of the will *and as a part of the estate of Mrs. Perdue.* Under our Code, § 113-901, in such cases the executor takes title. In so managing it, and previously to any further division of it, she was to account to the testatrix's mother, Mrs. Wooten, for one half of the income, the other half of the income she was *as trustee* to use "in the support, maintenance, and suitable education" of the minor here involved. There is nothing in the record to show any formal assent by the executrix to the legacy bequeathed by item 4, so far as the real property is concerned. See Code, § 113-801.

The effect of the decision of the Court of Appeals, as reported in divisions 4-7 (67 *Ga. App.* 203, 215), was to hold that the minor, proceeding for citation as he did through his legal guardian, was not entitled to an accounting or judgment in case of default against the executrix; this conclusion being reached upon the reasoning that the trustee named in the will was under a duty to ap-

ply such moneys (from income) which might be awarded to him in such an accounting for his benefit; and that, until removed, the trustee only had the right to such an accounting or recovery. Having reached such conclusion, the Court of Appeals held that the judgment in favor of the minor suing through a guardian, and. basing his claim upon the default of the executrix, was invalid. It may be, in view of certain statements appearing in the opinion to the effect that "the controversy in this case was properly between the trustee under the will and the beneficiary," that this decision was also predicated upon the idea that the defaults resulting in judgment arose out of acts committed by 'the executrix in her capacity as trustee for the minor, since the court of ordinary, in such a citation proceeding as the present, had no jurisdiction to hold the trustee as such to an accounting (such an accounting being properly the subject-matter only of a proceeding in equity in the exercise of its peculiar jurisdiction over trusts). But whether the decision be based on the one or the other of these theories, or both, we can not agree that it is sound or correct.

Let us first consider whether the default charged to Mrs. McKenzie and the losses resulting therefrom were committed and caused by her while acting in her capacity *as executrix* or *as trustee*. As stated, the Court of Appeals took the view that the whole controversy was between the minor and the trustee. We think it may fairly be stated that the case was tried before the auditor more or less, if not entirely, without regard to any distinction between the duties of Mrs. McKenzie as executrix and those which would devolve upon her as trustee. The auditor in his findings seemed to have accepted the premise laid down by counsel in the case, that the inquiry was to be made and accounting to be had with regard to the whole "trust," the word "trust" apparently being used, not in its special technical sense, but as respecting the whole property of the Perdue estate. As a matter of fact the original petition prayed only for the removal of the defendant as executrix, "but did not contain any prayer for her removal as trustee" (67 *Ga. App.* 211, 19 S. E. 2d, 772), this being prayed for by amendment. The auditor in his original report found that the defendant should be removed as trustee, but made no express finding on her removal as executrix, and in the statement of accounting made no separate finding as to the defaults occurring in one capacity or the other.

In this situation the court directed that the case be referred again to the auditor, and directed that he should make a supplemental finding showing what he meant in his report by use of the words "represented by her as trustee," that is "as to whether he meant said words to include the said defendant in her capacity as executrix under the will of the said Emily Wooten Perdue as well as trustee under said will." He was also directed to report to the court whether or not he "finds as a conclusion of law that the defendant should be removed as executrix of the will of Emily Wooten Perdue, as well as trustee under said will." In response the auditor reported that by use of the words "represented by her as trustee," and in referring to the "trust" and words of similar import, he intended that his findings should relate and apply to "the estate of Mrs. Emily Wooten Perdue, deceased," and further that Mrs. McKenzie should, upon the findings and for the reasons "previously stated by me," be removed in both capacities. Up to that time, and not until the case had passed from the auditor to the superior court on exceptions to his findings, had the question been raised of jurisdiction of an accounting against Mrs. McKenzie as trustee. That question was first presented by an additional amendment of exceptions to the auditor's report. After this question of jurisdiction had been made, and, as stated, after final report of the auditor had been filed, the defendant filed a further amendment to her answer, clarifying her contention and undertaking to separate and segregate her acts as trustee from those done by her as executrix. Thus the findings of the auditor which would relate to the particular questions now under discussion are lacking in that clarity which might have been expected if he had been afforded an opportunity to pass upon it.

But the mere reference to her as trustee or to the property in her hands as "the trust" in the findings of the auditor and in the pleadings did not make her a trustee. In the opinion in *Blake* v. *Black,* 84 *Ga.* 392 (11 S. E. 494), Chief Justice Bleckley stated: "We look to the substance of the matter, and think the proceeding was not vitiated by certain obvious errors such as the misdescription of Mrs. Bailey as trustee, the will itself, which was exhibited to the chancellor, showing that she was not a trustee otherwise than by virtue of her office as executrix. . . This same mistake occurs in the deed which she afterwards made to the purchaser. But

we think it affects the validity of the deed no more than it did the validity of the petition and the decree rendered thereon. . . Executors are trustees, and they are trustees having title to devised realty as well as to bequeathed personalty for the purpose of using the same, or the proceeds of the same, to pay debts and legacies."

It has already been pointed out that in taking charge of and holding the property which passed under the will the executrix took, in the first instance, an undivided interest in land. So, even after the partition proceedings referred to, she continued to hold the property set apart as the equal share of her testatrix which itself by terms of the will was to pass into equal undivided interests. In *Peck* v. *Watson,* 165 *Ga.* 853, 858 (142 S. E. 450, 57 A. L. R. 560), this court said: "Furthermore executors are trustees, and they are trustees having title to devised realty for the purpose of using the same, or the proceeds of the same, to pay debts and for distribution of the devised realty among the devisees thereof. *Beal* v. *Crafton,* 5 *Ga.* 301, 309; *Blake* v. *Black,* supra; *City of Blakely* v. *Hilton* [150 *Ga.* 27, 33, 102 S. E. 340]. An executor is a species of testamentary trustee. *Toombs* v. *Spratlin,* 127 *Ga.* 766, 770 (57 S. E. 59). Devisees of realty are cestuis que trustent of the executor until his assent to the devise of the realty is obtained. The executor being such trustee, and partition being, in part at least, for the benefit of the devisees, the executor was authorized to file the application for partition in this case. Application for partition by a trustee for the benefit of a cestui que trust is expressly authorized by our statute. Civil Code, § 5359. Furthermore, under the will in this case the lands of the testatrix were to be divided between her children. She owned only an undivided half interest in the lands involved in this case. As a preliminary and necessary step in such division, partition of this land between the executors and the cotenant of the testatrix would have to be effected. This partition could not be had between the devisees and such cotenant of the testatrix, for the reason that only those having title to land and possession or the right of possession can, as a general rule, obtain partition, or be proceeded against for the partition of land." It has already been stated that there had been no formal assent to the legacy of the minor, and from the record it may also be said that nothing appears to have been done from

which such assent would be implied. See generally, on the question of assent to legacies, *Lewis* v. *Patterson*, 191 *Ga.* 348 (12 S. E. 2d, 593); *Miller* v. *Harris County*, 186 *Ga.* 648 (198 S. E. 673); *Whatley* v. *Musselwhite*, 189 *Ga.* 91 (5 S. E. 2d, 227); Redfearn on Wills, § 150. While a person may act under the same will, as nominated in the present instance, both as executor and as trustee, as to any particular duty to be performed by such person it must generally be done either in one capacity or the other. In 1 Scott on Trusts, 53, § 6, it is stated: "Where the same person is named executor and trustee it is not always easy to determine the exact point at which he ceases to act as executor and enters upon the performance as trustee. Mr. Birrell tells us that 'Sir John Wickens, a very nice observer, used to tell his pupils that it invariably took place in the dead hours of the night.' It is clear enough in many cases that the change has taken place. If an executor has filed his final account showing that he has completed his duties as executor, and has transferred the property to himself as trustee, it is clear that he is thereafter acting as trustee and not as executor. But it is not essential that he should have completed performance of all his duties as executor before he enters upon the performance of his duties as trustee, since he may be acting as trustee with respect to a part of the property while still acting as executor with respect to the rest of the property." See 1 Perry on Trusts, § 263. In *Robinson* v. *Georgia Savings Bank*, 185 *Ga.* 688, 693 (196 S. E. 395), this court said: " 'All property, both real and personal, being assets to pay debts, no devise or legacy passes the title until the assent of the executor is given to such devise or legacy.' Code, § 113-801. Even where the same person is expressly or by implication made trustee as well as executor, the administration of the executor does not end until there is a delivery, express or implied, to the trustee, upon assent of the executor, express or implied, to the legacy in trust. Redfearn on Wills, 365, and cit." "While a person may occupy the dual status of executor and trustee, where it becomes important to ascertain whether he was acting in the one or the other capacity, it will ordinarily be held that an executor does not change his status to that of trustee until completion of administration as executor, or until legal ascertainment and separation of the trust funds from the general funds of the estate, although after lapse of a rea-

sonable time for settlement of an estate an executor may be regarded as a trustee." 65 C. J. 641, § 511(e). "One who is a testamentary trustee as well as executor holds the funds as executor until his final account as such is settled, and he can not properly assume the rights and duties of trustee until the court has approved his accounts as executor and ordered a distribution of the estate. 24 C. J. 935, § 2319(e). "If one is executor or administrator and also guardian of a beneficiary he holds the estate first of all as executor or administrator, and does not hold anything as guardian which is not separated from the assets of the estate or placed properly to his account as guardian. So too if an executor is also the designated trustee under a will he comes into possession as executor, and his election afterward to hold as trustee must be manifested by some plain and unequivocal act." 24 C. J. 52, § 470.

While the statements of the principle quoted in the foregoing texts may not furnish the precise line of demarcation to be drawn in every case, they seem nevertheless to be applicable in the main to the present one. So long as Mrs. McKenzie operated these farming lands as executrix without any assent to the legacies, she is accountable for default in such operation in a proceeding against her as executrix, even where the default consisted in her failure to turn over to the trustee property or income in her hands. Such would be her default as executrix, and to render an account against her as such would not be an invasion of that jurisdiction which has to do with trusts. Of course in the nature of things every executor is to be considered for some purposes and in some respects as a trustee. *Peck* v. *Watson, Blake* v. *Black,* supra. So neither the reference by the auditor to the "trust" or the "trust estate," nor the fact that whatever title or property so held by Mrs. McKenzie was held for the benefit of the minor, required the conclusion that such an accounting was one against the defendant "as trustee," of which the court of ordinary in the present proceeding would be without jurisdiction. It may properly be said that when the defendant paid money to or for the benefit of the minor she did so as trustee; but the controversy here involved relates, not to income which the executrix has paid over to the trustee and as to which she as trustee is in default in failure to account to the minor, but to her failure to account to the trustee for his benefit; and this is not altered by the fact that the executrix is also his

364

trustee. The case is very different from one where the executrix has concluded her administration as such, and has set apart and holds separately as trustee such funds or property. In the latter case the trust would be wholly apart from the estate. Thus the defendant stood properly chargeable, as to the acts complained of in her duty and responsibility as executrix.

■ Could the guardian proceed in behalf of the minor against the executrix, in view of the provisions of the will nominating Mrs. McKenzie as trustee with power and duty to apply the income in his behalf? The minor was a "person interested as distributee or legatee" who might, under the terms of the Code, § 113-2201, cite the executor "to appear before the ordinary for a settlement of his accounts," which, when had, would be conclusive upon the executor. Ordinarily, this right in the minor, where he has a legal guardian, should be maintained by his guardian, or by next friend or other competent representative (*Shorter* v. *Hargroves,* 11 *Ga.* 658; *Poullain* v. *Poullain,* 76 *Ga.* 420 (8), 422; and such a citation would be binding on the minor.

If some other person had been named as trustee under the will, and an accounting had been needed as to the acts and doings of the executrix, it may be conceded, as held by the Court of Appeals, that the minor could not subvert the provisions of the will or avoid them by moving through some person other than the trustee. But here the same person who is alleged and found to be in default as executrix is also the trustee. Even if it could be imagined that she had a dual personality and would in one capacity be willing to sue herself in another capacity as to which she was in default, she could not do so. In *Langford* v. *Johnson,* 46 *Ga. App.* 444 (3) (167 S. E. 779) it was held: "The rule is well settled at law that a person can not sue himself, in other words, be both plaintiff and defendant in the same action. The rule applies in all cases where the character of the plaintiff and defendant unite in the same person, although such person sues and defends in different capacities. 1 C. J. 983, § 90. 'The broad rule of equity, applicable alike to agents, partners, guardians, executors, administrators, and directors and managing officers of corporations, is that it is the duty of a trustee not to accept any position or to enter into any relation or to do any act inconsistent with the interest of the beneficiary.' *Haley* v. *Atlantic National Fire Insurance Co.,* 151 *Ga.*

158, 163 (106 S. E. 122); *McDougall* v. *National Bank of Columbus*, 150 *Ga.* 579, 581 (104 S. E. 630); *Swope* v. *Swope*, 173 Ala. 157 (55 So. 418, Ann. Cas. 1914A, 937)." The *Langford* decision was cited with approvel in *Trust Company of Georgia* v. *Brown*, 186 *Ga.* 496 (197 S. E. 803). In 1 C. J. S. 1074, § 31, it is stated: "It is a well-settled rule of law that a party can not maintain an action against himself, or, stated otherwise, one person can not in one and the same action hold the position of both plaintiff and defendant. This is the rule whether the action is one in contact or one in tort. The rule applies in all cases where the character of plaintiff and defendant unite in the same person, although such person is not the sole plaintiff or defendant, or sues and defends in different capacities, as in actions between a person and a board of trustees or other board of which he is a member." Assuming that she is in default, as we must here do, because she was so found in her capacity as executrix, she thus becomes disqualified as trustee to assert such default in behalf of and in the interest of the minor. The will appointed no substitute to serve in such a situation, and thus the minor is restored to his rights of procedure independently of the will; and while not freed from the incumbrance of the trust, he must be allowed to proceed through some representative; and if he had no legal guardian, he might proceed by next friend or through other competent representative. Code, § 3-115. So we conclude that where the guardian, acting in behalf of the minor by reason of the disqualification of the trustee who might otherwise have acted as testamentary guardian, sought a settlement of his accounts with the executrix, such proceeding was properly maintained; and the judgment resulting therein, being supported by the findings of the auditor, was properly sustained by the superior court.

■ The superior court approved the findings of the auditor recommending that the executrix be removed; but the Court of Appeals, on this question stating that "an executor should not be removed for slight causes," based upon *Johns* v. *Johns*, 23 *Ga.* 31, 40, held that "there does not appear to be sufficient ground for removing the executrix." We have ruled that what was done by the defendant, and her acts which were reviewed by the auditor, were by her as executrix. In *Johns* v. *Johns*, supra, the general statement was made that "The court ought to look with much scrutiny

into a bill for the removal of executors. They ought not to be removed for slight causes, nor solely on the ground of poverty." But in that case property of an estate had been placed in the hands of a receiver, and was withdrawn from the executor by interlocutory judgment. It was said in the opinion, after calling attention to the fact that the case must go before a jury and a final hearing be had after answer and proof: "If the executrix has been guilty of waste, negligence, mismanagement, or has, without justification, produced the difficulties suggested in the bill, all the circumstances will be examined into, and such a decree will be rendered as shall protect the estate from loss." In the present case the proceeding is under statute (Code, § 113-2201), and, as provided in § 113-1229, when the executor "wastes, or in any manner mismanages the estate," or when the ordinary finds "that for any reason he is unfit for the trust reposed in him," the ordinary "shall cite such administrator [executor] to answer to such charge at some regular term of the court, and upon the hearing of his return the ordinary may, in his discretion, revoke the letters of administration," or, in such case as this, remove the executor (*Bruce* v. *Fogarty,* 53 *Ga. App.* 443, 186 S. E. 463), "or pass such other order as in his judgment is expedient under the circumstances of each case."

Among other findings made by the auditor, in addition to the items of default which were manifested in his judgment entered against the executrix, he found that "Mrs. McKenzie has operated the plantation as a unit, and has pooled her personal interest therein with the interests of Emily Wooten Perdue estate and the interest of Mrs. Wooten therein, as though all of these several parties or interests were tenants in common of the land and partners in the farming operations." In paragraph 11 he reported as follows: "In the face of repeated objections conveyed to her by the guardian of the plaintiff, Mrs. McKenzie has carried on the Wooten farms as a joint operation, although in doing so she was commingling her own personal business with that of the trust estate for which she was acting as trustee. She owned individually one third (1/3) of the properties constituting the Wooten farms. The trust estate which she represented owned one-third (1/3) interest therein. Mrs. Wooten, for whom Mrs. McKenzie acted as agent, owned the other one-third (1/3) interest. After the lands were actually partitioned under an order of Terrell superior court, Mrs.

McKenzie continued to operate them as a unit as if no partition had been made. I further find that in the course of the proceedings in this case Mrs. McKenzie has given no indication of any intention or purpose to abandon this pooling of the several interests in the Wooten farm, and that she has not indicated in any way an intention to abandon the commingling of her personal interests with those of the trust estate represented by her as trustee. On the contrary, throughout the proceedings in this case, she has openly and actively manifested a determination to continue this practice and to fight for the right to do so, as she did when she resisted the efforts to have these properties partitioned in the proceedings in Terrell County superior court." And he further found "that the only way to terminate commingling of the personal interest of Mrs. McKenzie" with the properties of the estate of Mrs. Perdue was to remove her, "and to appoint some fit and proper person to represent the trust." He made further findings in detail as to the holding from year to year, "looking for higher prices," large quantities of cotton produced on the land involved, and that in many instances losses had been sustained as to which he rendered account; that in other instances a "profit" was realized. Observing that there was no authority in the will and no order of court giving the defendant "authority to reinvest trust funds in other than legal investments," he found that "it was her duty as trustee to sell the cotton grown on the Wooten farm within a reasonable time after it was gathered," but that as a result of such action of her part she "has incurred the expense of storing and insuring it, and now finds herself with the cotton worth much less than it was when it was gathered." While emphasizing that the defendant had commingled her own personal property and funds with those of the minor, had failed to keep proper accounts, and had speculated on the rise of prices as to the cotton held, he nevertheless stated in his report that "The defendant has been diligent in the operation of the Wooten farm, and has made at least a fair success of it during a period of time when many others were not succeeding at like undertakings. It is also to be said in favor of the defendant that the record clearly indicates that she has on the whole conducted the affairs of the Wooten farm with integrity." In addition to the foregoing, his several findings with reference to particular acts of mismanagement against her seem to be suffi-

368

ciently stated in the report of the case as decided by the Court of Appeals, supra.

The rule as to the use of property being administered by one who acts as executor for the use and benefit of another was stated in *Rogers* v. *Dickey,* 117 *Ga.* 819 (4) (45 S. E. 71), as follows: "If trustees use trust funds in a manner not authorized by law, they assume all the risks of the venture, and must bear all losses; but, being prohibited from making personal gain out of the property of the beneficiaries, they are chargeable with all profits and increase arising from the irregular or illegal venture." And, as there stated, this rule was adhered to and again applied in *Clark* v. *Clark,* 167 *Ga.* 1, 4 (144 S. E. 787), where it was said: "It is a fundamental rule that a trustee can make no profit for himself out of the trust estate. This principle is so essential to the honest and proper management of trust property that the trustee is never encouraged to take risks with it for his own aggrandizement. On the contrary, he is restrained from so doing by being compelled, if his venture turns out unfortunately, to account to the beneficiary under the trust for the full value of what is lost. If the venture be successful, he is required to turn over his gain to the beneficiary of the fund embarked in the enterprise. *Caruthers* v. *Corbin,* 38 *Ga.* 75 (5); *Roberts* v. *Mansfield,* 38 *Ga.* 452, 458. The current of Georgia policy, both legislative and judicial, runs steadily in one direction and to one point, that is, that no trustee shall have the opportunity or be led into the temptation to make profit out of the business of beneficiaries entrusted to his care, by bargaining with himself, directly or indirectly, in respect to that business. *Mayor &c. of Macon* v. *Huff,* 60 *Ga.* 221, 228. Trustees can never be allowed to derive a personal advantage from the use of the trust property. *Rogers* v. *Dickey,* 117 *Ga.* 819 (45 S. E. 71). They can not make a personal profit in dealing with trust property. *Dowling* v. *Feeley,* 72 *Ga.* 557; *Dorsett* v. *Garrard,* 85 *Ga.* 734 (11 S. E. 768); *Bourquin* v. *Bourquin,* 120 *Ga.* 115, 118 (47 S. E. 639). A testamentary trustee must act, not only for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him; and he owes an undivided duty to the beneficiary, and must not place himself in a position where his personal interest will conflict with the interest of the beneficiary. Gould v. Gould,

178 N. Y. Supp. 37 (108 Misc. 42) ; Pyle v. Pyle, 137 App. Div. 568 (122 N. Y. Supp. 256), affirmed, 199 N. Y. 538 (92 N. E. 1099). As long as the confidential relation lasts, the trustee owes an undivided duty to the beneficiary under the trust, and can not place himself in a position which would subject himself to conflicting duties, or expose him to the temptation of acting contrary to the best interests of the cestui que trustent. 3 Pomeroy's Equity Jurisprudence, § 1077. Beneficiaries of a trust are entitled to have it administered by trustees entirely at the service of the trust and above suspicion. Crummey v. Murray, 224 N. Y. Supp. 49 (130 Misc. 378). The purpose of this rule is to require a trustee to maintain a position where his every act is above suspicion, and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. Whenever he acts otherwise, or when he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, or the interests of the beneficiaries whom he represents, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed. Munson v. Syracuse &c. Ry. Co., 103 N. Y. 58 (8 N. E. 355) ; Pyle v. Pyle, supra; Elias v. Schweyer, 40 N. Y. Supp. 906 (17 Misc. 707) ; 27 Am. & Eng. Enc. Law (1st ed.), 194."

In dealing with the question of the removal of the executrix, and the contentions about the joint operation of the property, the opinion of the Court of Appeals, stated: "Consequently it has not been established that the minor plaintiff suffered any loss from the mere fact that the property was operated as a unit." It would seem from the authorities quoted above that the question can never be confined to a consideration of whether there was a loss, much less an "irreparable loss" spoken of in the Court of Appeals opinion, but the antagonistic relationship itself is condemned. It was the refusal to obey the partition decree and segregate the property of the legatees from that of her own and others in the one instance, and the venturing and speculation in the other, rather than a consequent loss, that justifies the removal. And so far as this phase of the case is concerned, the duty and responsibility would be the same in the case of an executor or trustee; for in either case, however the person so entrusted may be regarded technically, he is actually a trustee. Cases cited supra.

The findings by the auditor, upon which the decision of the Court of Appeals was predicated, offered abundant ground to support his conclusion approved by the judge of the superior court that the executrix should be removed.

From what has been said the judgment of the Court of Appeals must be reversed and the case remanded to that court for further proceedings not inconsistent with this opinion.

*Judgment reversed. All the Justices concur, except*
*Atkinson, P. J., and Duckworth, J., who dissent from the first*
*division of the opinion.*

DUCKWORTH, Justice. Being of the opinion that the guardian would not be entitled to a judgment in a court of law, so long as there is a trustee who has not been removed, I dissent from the rulings in division 1 of the opinion, which permit such recovery. Only a court of equity could remove the trustee, but the judgment in favor of the guardian has the effect of removing the trustee in so far as the amount represented by that judgment is concerned. The judgment therefore does by indirection what a court of law can not do directly, and constitutes an invasion of equity jurisdiction.